2004 UT App 378

**Julian Dean HATCH, Plaintiff and Appellant,**

v.

**Larry DAVIS, Defendant and Appellee.**

**No. 20020778–CA.**

Court of Appeals of Utah.

Oct. 28, 2004.

Rehearing Denied Dec. 28, 2004.

Budge W. Call, Bond & Call LC, Salt Lake City, for Appellant.

James C. Bradshaw and Ann Marie Taliaferro, Brown Bradshaw Anderson & Moffat, Salt Lake City, for Appellee.

Before Judges GREENWOOD, JACKSON, and THORNE, Jr.

## OPINION

GREENWOOD, Judge:

¶ 1 Plaintiff Julian Hatch appeals from a jury verdict in favor of Defendant Larry Davis and from various judgments and orders of the trial court. Specifically, Plaintiff argues that the trial court erred by (1) failing to dismiss Defendant's claims for malicious prosecution, abuse of prosecution, and intentional infliction of emotional distress; (2) prohibiting Plaintiff from disposing of his assets after the trial; and (3) issuing orders in supplemental proceedings based on a partial judgment. We reverse in part, and reverse and remand in part.

## BACKGROUND

¶ 2 On September 26, 1996, Plaintiff filed a complaint against Defendant in federal court for an alleged assault and battery that had occurred during a town council meeting in Boulder, Utah, in 1996. The federal court ultimately dismissed the assault and battery claim for lack of jurisdiction. On March 10, 1998, Plaintiff refiled his assault and battery

claim in state court. Defendant filed an answer and counterclaim for abuse of process and malicious prosecution.[1]

¶ 3 Several months later, Plaintiff filed a motion to dismiss the counterclaim. Defendant then filed an amended counterclaim in which he added claims for intentional infliction of emotional distress [2] and attorney fees. In response, Plaintiff filed a motion to dismiss the amended counterclaim.[3] The trial court denied Plaintiff's motion to dismiss.

¶ 4 A year and a half later, after extensive discovery, Plaintiff filed a motion for summary judgment in which he argued that the trial court should dismiss Defendant's claims for malicious prosecution, abuse of process, and intentional infliction of emotional distress. The trial court also denied this motion.

¶ 5 Subsequently, Plaintiff filed a motion in limine in which he sought to exclude Defendant's expert testimony, any correspondence or dealings by Plaintiff with Defendant's wife made outside Defendant's presence, and any letters written by Plaintiff to government officials. The trial court denied the motion but required that Defendant make his expert available for a deposition.

¶ 6 The following day, Plaintiff filed a notice of deposition in which he indicated that he would be deposing Defendant's expert on March 21, 2002. This deposition never took place for reasons that are unclear from the record. However, rather than further attempting to depose Defendant's expert,

Plaintiff filed a second motion to exclude her testimony.

¶ 7 In April 2002, the case was tried before a jury. During the trial, it emerged that beginning in approximately 1990, and lasting until approximately 1993, Plaintiff wrote a series of letters to Defendant's supervisors and other government officials, complaining that Defendant had failed to properly carry out his duties as manager of the Anasazi State Park. These letters were apparently prompted by an unresolved dispute between Plaintiff and Defendant over a Native American burial display, which Plaintiff wanted removed from the park.

¶ 8 In addition to writing letters, Plaintiff personally complained about Defendant to Defendant's supervisors. Defendant testified that the most recent of these complaints occurred in 1999, immediately before Defendant's retirement. However, there was no evidence that Defendant's job was jeopardized as a result of Plaintiff's complaints.

¶ 9 Defendant also testified that in 1992, he and Plaintiff exchanged heated words about the Native American burial site. Defendant claimed that this exchange ended with Plaintiff threatening him outside the Boulder post office. Defendant further testified that Plaintiff has harassed not only him, but also his wife, Judy Davis.[4] However, there is no evidence that any of the alleged harassment of Judy Davis occurred in Defendant's presence. Defendant claimed that this conduct,

1. Defendant's abuse of process claim was based on the two lawsuits that Plaintiff filed against him for assault and battery. Defendant alleged that the filing of these lawsuits was "a perversion of the process in order to accomplish an improper purpose; that is to intimidate the residents of the town as well as the town council to comply with [Plaintiff's] narrow and peculiar and philosophical positions." Defendant's malicious prosecution claim was based on Plaintiff bringing an action "without probable cause and for the purpose for [sic] harassment and annoyance."

2. Defendant's claim for emotional distress was based on the following: (1) "[K]nowingly and intentionally wag[ing] a campaign of harassment against [Defendant], including, but not limited to, repeatedly writing to his employer alleging malfeasance and the commission of bad acts by [Defendant] and demanding termination of his employment;" (2) "[w]ag[ing] a campaign of

threats and insults against [D]efendant's wife" in both her role as Boulder Town Clerk and Postmistress for the town of Boulder; and (3) filing lawsuits against Defendant on two separate occasions "with the intent of harassing [D]efendant."

3. In his motion to dismiss the amended counterclaim, Plaintiff again requested that the claims for malicious prosecution and abuse of process be dismissed. He did not address Defendant's claims for intentional infliction of emotional distress and attorney fees.

4. Defendant's wife was not a party to this lawsuit and did not bring a claim of her own against Plaintiff for intentional infliction of emotional distress. Indeed, she testified that other than Plaintiff's attitude and his shouting, there was nothing about Plaintiff's conduct that she considered to be outrageous or intolerable.

in addition to other conduct, including the lawsuits filed against him by Plaintiff, resulted in his experiencing emotional distress. According to Defendant's expert, this distress ultimately caused Defendant to suffer an extreme clinical disorder, the physical manifestations of which included loss of appetite, headaches, and upset stomach.

¶ 10 At the close of Defendant's presentation of evidence, Plaintiff moved to dismiss the abuse of process and malicious prosecution claims on the basis that probable cause existed to support Plaintiff's assault and battery claim. Plaintiff also moved to dismiss Defendant's intentional infliction of emotional distress claim on the basis that Defendant had failed to establish that Plaintiff's conduct was outrageous or Defendant's distress severe. The trial court denied these motions. However, prior to submitting the case to the jury, the trial court dismissed the malicious prosecution claim because the prior proceeding had not been terminated in Defendant's favor. In addition, the trial court agreed to a stipulation by the parties that Defendant's damages for his abuse of process claim would be limited to the costs of defending against Plaintiff's assault and battery claim.

¶ 11 After deliberations, the jury found no cause of action on Plaintiff's assault and battery claim, and awarded Defendant $75,000 for his abuse of process claim, and $87,000 for his intentional infliction of emotional distress claim. Two days later, Defendant faxed a motion to the trial court asking the court, pursuant to rule 69(q) of the Utah Rules of Civil Procedure, to prohibit Plaintiff from disposing of any real or personal property. After an off-the-record telephonic conference between the trial court and counsel for both parties, the trial court granted Defendant's motion and issued an order prohibiting Plaintiff from encumbering any real or personal property with a value greater than $500, without obtaining prior written approval from the court. Shortly thereafter, the trial court issued a partial judgment in the amount of $87,000 for Defendant's intentional infliction of emotional distress claim.

¶ 12 Subsequently, Plaintiff filed a Motion to Vacate the Order Precluding Plaintiff's Transfer or Encumbrance of Property. This motion was followed by a Motion to Set Aside the Verdict on Intentional Infliction of Emotional Distress, and a Motion for New Trial; or in the Alternative a Remittitur on the Amount of Damages. The trial court denied these motions.

¶ 13 The trial court issued a Writ of Garnishment, attaching funds in one of Plaintiff's bank accounts. Two months later, the trial court, in a Motion and Order in Supplemental Proceedings, also ordered Plaintiff not to sell, loan, give away, or otherwise dispose of his non exempt property.

¶ 14 After briefing and argument by both sides, the trial court determined that Defendant incurred $43,542.93 in attorney fees defending the assault and battery claim. Accordingly, a final judgment was entered that same day awarding Defendant a total of $130,542.93 for both his abuse of process and intentional infliction of emotional distress claims. Plaintiff timely appealed.

## ISSUES AND STANDARD OF REVIEW

¶ 15 Plaintiff first argues that the trial court erred in failing to dismiss Defendant's malicious prosecution and abuse of process claims. "On appeal from a motion to dismiss, we review the facts as they are alleged in the complaint. We accept the factual allegations in the complaint as true and consider all reasonable inferences to be drawn from those facts in a light most favorable to the plaintiff." *Ramsey v. Hancock*, 2003 UT App 319, ¶ 1 n. 1, 79 P.3d 423 (quotations and citations omitted).

¶ 16 Plaintiff also argues that Defendant's claim for intentional infliction of emotional distress should have been dismissed as a matter of law because there was insufficient evidence to support the jury finding that his conduct was extreme and outrageous. "To support an insufficiency of the evidence claim on appeal, 'the one challenging the verdict must marshal the evidence in support of the verdict and then demonstrate that the evidence is insufficient when viewed in the light most favorable to the verdict.' " *Child v. Gonda*, 972 P.2d 425, 433 (Utah 1998) (quoting *McCorvey v. State Dep't of Transp.*, 868 P.2d 41, 44 (Utah 1993)). "So long as some evidence and reasonable infer-

ences support the jury's findings, we will not disturb them." *Id.* at 433.

¶ 17 Next, Plaintiff argues that Defendant's claim for intentional infliction of emotional distress is barred by Utah's applicable statute of limitations. "The trial court's application of a statute of limitations presents a question of law which we review for correctness." *Estes v. Tibbs,* 1999 UT 52, ¶ 4, 979 P.2d 823.

¶ 18 Plaintiff also argues that a person claiming intentional infliction of emotional distress based on outrageous conduct directed toward another cannot recover unless that person was present at the time of the outrageous conduct. Therefore, because Defendant was not present when Plaintiff allegedly harassed Defendant's wife, Plaintiff maintains the trial court erred by failing to dismiss Defendant's claim. A trial court's interpretation of the law is reviewed for correctness. *See Ledfors v. Emery County Sch. Dist.,* 849 P.2d 1162, 1162–63 (Utah 1993).

¶ 19 Finally, Plaintiff argues that he has a First Amendment right to petition and criticize the government and, therefore, the trial court erred by failing to dismiss Defendant's intentional infliction of emotional distress claim. Interpretation of the federal constitution is a question of law that is reviewed for correctness. *See State v. Harmon,* 910 P.2d 1196, 1199 (Utah 1995).[5]

## ANALYSIS

### I. Malicious Prosecution

¶ 20 Plaintiff first argues that the trial court erred in failing to dismiss Defendant's malicious prosecution claim prior to trial.[6] According to Plaintiff, an action for malicious prosecution can be brought only after the underlying action has been terminated in favor of the accused, and therefore, cannot be brought as part of a counterclaim.

¶ 21 In response, Defendant argues that Plaintiff's claim fails because the underlying action was terminated in Defendant's favor when Plaintiff's federal lawsuit for assault and battery was dismissed for lack of jurisdiction. Defendant further argues that in any event, Utah case law provides that in unusual circumstances, the general rule that the underlying proceeding be resolved in favor of the accused need not be followed.[7]

¶ 22 Malicious prosecution, or more correctly, the wrongful use of civil proceedings,[8] is defined as follows:

> "One who takes an active part in the initiation, continuation, or procurement of civil proceedings against another is subject to liability to the other for wrongful civil proceedings if (a) he [or she] acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based, and (b) except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought."

*Gilbert v. Ince,* 1999 UT 65, ¶ 19, 981 P.2d 841 (alteration in original) (quoting Restatement

---

5. Our disposition of this case makes it unnecessary to consider Defendant's challenges to the trial court's post verdict orders. However, our decision will require the parties and the trial court on remand to examine the affect of those orders.

6. We acknowledge that the trial court dismissed the malicious prosecution claim after Defendant completed his case. However, the failure to do so prior to trial may have allowed introduction of evidence and argument by counsel that tainted the jury's consideration of the issues submitted to it.

7. Defendant also argues that Plaintiff's argument fails because Plaintiff did not perfect the record or marshal the evidence on appeal. However, this argument would be relevant only if we were

to conclude that the trial court correctly denied Plaintiff's motion to dismiss.

8. Defendant incorrectly labeled his cause of action as "malicious prosecution." Under Utah law, malicious prosecution occurs when a defendant initiates *criminal* proceedings against an innocent plaintiff, whereas wrongful use of civil proceedings occurs when a defendant initiates *civil* proceedings without a justifiable basis. *See Gilbert v. Ince,* 1999 UT 65, ¶¶ 18–19, 981 P.2d 841. Therefore, in this case, the term "wrongful use of civil proceedings" is more appropriate. However, in order to minimize confusion, we will continue to refer to Defendant's cause of action as "malicious prosecution."

(Second) of Torts § 674 (1997)). Defendant maintains that the trial court properly allowed his claim to proceed because Plaintiff's federal lawsuit for assault and battery was dismissed for lack of jurisdiction, and therefore, the proceedings were terminated in his favor. We disagree.

¶ 23 In *Lackner v. LaCroix*, 25 Cal.3d 747, 159 Cal.Rptr. 693, 602 P.2d 393 (1979), the California Supreme Court considered what constituted a favorable termination of an underlying action in the context of a malicious prosecution claim.[9] *See id.* at 394. The court emphasized that the "termination must *reflect* on the merits of the underlying action" and that " 'a dismissal ... for lack of jurisdiction ... not only is not on the merits, it is unreflective of the merits.' " *Id.* at 394–95 (first alteration in original) (citation omitted). Therefore, because Plaintiff's claim was dismissed for lack of jurisdiction and not on the merits, Defendant's claim that the underlying action was terminated in his favor fails.

¶ 24 Defendant also argues that, even if the underlying action had not been resolved in his favor, his claim for malicious prosecution should still have been allowed to proceed on the basis that the claim involved "unusual circumstances." Although it not clear from Defendant's brief what these "unusual circumstances" were, in his Memorandum in Opposition to Plaintiff's Motion to Dismiss Counterclaim, Defendant suggests that this case involved "unusual circumstances" because Plaintiff had "twice filed a completely frivolous claim in federal and state court, knowing full well that his claim had no chance of prevailing."

¶ 25 As discussed earlier, Utah courts have adopted the Restatement's requirement that the underlying proceeding must be terminated in favor of the accused before a claim for the wrongful use of civil proceedings can be brought. *See Gilbert*, 1999 UT 65 at ¶ 19, 981 P.2d 841. However, the *Gilbert* court noted that in *Baird v. Intermountain School Federal Credit Union*, 555 P.2d 877, 878 (Utah 1976), the Utah Supreme Court varied

from the Restatement standard when it implied that "in the 'most unusual circumstances,' " a suit for wrongful civil proceedings "could be maintained without a showing that the underlying action terminated in favor of the person against whom it was brought." *Gilbert*, 1999 UT 65 at ¶ 19 n. 10, 981 P.2d 841 (quoting *Baird*, 555 P.2d at 878). It is this language from *Baird* that Defendant relies on for his argument that it was not improper for his action for malicious prosecution to be brought as part of a counterclaim.

¶ 26 In *Baird*, the court recognized that a cause of action for the wrongful bringing of civil proceedings exists "only when the civil suit is shown to have been brought without probable cause, for the purpose of harassment or annoyance; and it is usually said to require malice." *Id.* (footnote omitted). The court then noted, without explanation, "that except in the most unusual circumstances, a prerequisite to such a showing is that the prior suit terminated in favor of the defendant therein." *Id.*

¶ 27 Although no Utah court has discussed what the supreme court may have meant by the term "most unusual circumstances," we find the case of *In re Terracor*, No. 81–00599, 1982 Bankr.LEXIS 3251 (Bankr.N.D.Utah Sept. 27, 1982), to be instructive. There, the court addressed the propriety of filing an action for wrongful use of civil proceedings as part of a counterclaim based on the "unusual circumstances" exception set forth in *Baird*. *See In re Terracor*, 1982 Bankr.LEXIS 3251 at *10. The court began by suggesting that despite *Baird's* language, if the issue were ever raised in Utah, termination in favor of the defendant would be required as an element of the tort of wrongful use of civil proceedings. *See id.* at *6. The court noted that in every prior Utah case discussing the tort, the prior proceedings had been terminated in the plaintiff's favor. *See id.* The court further noted that in Utah, wrongful use of civil proceedings has been defined by analogy to malicious prosecution, and that in Utah, "malicious prosecu-

---

**9.** Although labeled as a malicious prosecution claim, the underlying proceeding involved an action for medical malpractice. *See Lackner v. LaCroix*, 25 Cal.3d 747, 159 Cal.Rptr. 693, 602 P.2d 393, 394 (1979). Therefore, under Utah law, this claim would properly have been considered a claim for the wrongful use of civil proceedings. *See supra* note 8.

tion requires termination in favor of the defendant." *Id.*

¶ 28 The *Terracor* court then went on to address the defendant's argument directly and gave four reasons for rejecting it. First, the court noted that the "unusual circumstances" exception in *Baird* may have been dictum because "[a]lthough the action arose from a civil context, its immediate antecedent was criminal contempt[,]" and therefore, when "[v]iewed in this light, the case was for malicious prosecution." *Id.* at \*5 n. 2. Second, the court noted that "this dictum refers to the role of termination in determining probable cause, not as an element of the tort." *Id.* at \*10. Third, the court noted that "in any event, the 'unusual circumstances' [were] not identified" in *Baird*, and speculated that this language was simply a reference to "the exception, already recognized in the Restatement, for ex parte proceedings." *Id.* Finally, the court noted that the defendants had cited no controlling authorities or advanced any compelling reasons in support of their argument. *See id.*

■ ¶ 29 We agree with the court's conclusion in *In re Terracor* that the "unusual circumstances" exception in *Baird* is dictum for the reasons set forth in the opinion, *see In re Terracor*, 1982 Bankr.LEXIS 3251 at \*5, \*10, and because subsequent Utah cases that discuss the elements of wrongful use of civil proceedings fail to mention the exception.[10] *See, e.g., Winters v. Schulman*, 1999 UT App 119, ¶ 28, 977 P.2d 1218 (noting that

a wrongful use of civil proceedings claim "requires that the prior 'proceedings have terminated in favor of the person against whom they were brought' " (quoting *Amica Mut. Ins. Co. v. Schettler*, 768 P.2d 950, 959 (Utah Ct.App.1989))).[11] Therefore, we hold that under Utah law, a defendant is required to have the underlying action resolved on the merits in his or her favor prior to initiating a claim for wrongful use of civil proceedings. In this case, the underlying action had not been resolved in Defendant's favor at the time he filed his counterclaim. Accordingly, the trial court erred in denying Plaintiff's motion to dismiss before trial commenced.[12]

## II. Abuse of Process

¶ 30 Plaintiff next argues that the trial court erred by failing to dismiss Defendant's abuse of process claim. According to Plaintiff, an action for abuse of process can only be brought if two essential elements are satisfied: "(1) an ulterior motive; and (2) a willful act in use of the process not proper in the regular conduct of the proceedings." Plaintiff maintains that Defendant's claim failed to state the second element and, therefore, should have been dismissed.[13]

¶ 31 In response, Defendant argues that Plaintiff never presented the "willful act" element of abuse of process to the trial court, and therefore, failed to properly preserve the issue for appeal. Defendant also argues, that in any event, Plaintiff is incorrect because Defendant "clearly set forth pretrial

10. However, even if the supreme court's "most unusual circumstances" language was not dictum, we doubt that refiling a lawsuit, previously dismissed for lack of jurisdiction, would constitute a "most unusual circumstance[ ]." *Baird v. Intermountain Sch. Fed. Credit Union*, 555 P.2d 877, 878 (Utah 1976). Under Utah law, Plaintiff was permitted to refile his claim in state court after it was dismissed in federal court. *See* Utah Code Ann. § 78–12–40 (2002) (allowing refiling of action when plaintiff fails in an action "otherwise than upon the merits").

11. In *Amica Mutual Insurance Co. v. Schettler*, 768 P.2d 950 (Utah Ct.App.1989), the plaintiff mistakenly labeled the tort of wrongful use of civil proceedings as abuse of process. *See id.* at 959. This court, however, appropriately cited section 674 of the Restatement of Torts discussing wrongful use of civil proceedings. The subsequent case of *Winters v. Schulman*, 1999 UT

App 119, 977 P.2d 1218, quoted *Amica*, but did not include the caveat that the plaintiff there misidentified the tort at issue.

12. Because we conclude that the trial court erred by failing to dismiss Defendant's malicious prosecution claim, we do not address Plaintiff's argument that the trial court also erred when it failed to inform the jury that Defendant's malicious prosecution claim had been dismissed.

13. Relying on *Amica* and *Winters*, Plaintiff also mistakenly argues that Defendant's abuse of process claim should have been dismissed because the underlying action was not terminated in Defendant's favor. However, as noted earlier, the court in *Amica* referred to a wrongful use of civil proceedings claim as an abuse of prosecution claim, relying on plaintiff's erroneous labeling of the claim. *See supra* note 11.

his theory that [Plaintiff] used this lawsuit and continuing threats of lawsuits, to extort [Defendant] to acquiesce to [Plaintiff's] demands and philosophical view without hope of success." [14]

¶ 32 Because it is a threshold matter, we first consider Defendant's argument that Plaintiff failed to preserve this issue for appeal. In his Memorandum in Support of Plaintiff's Motion to Dismiss Defendant's Amended Complaint, Plaintiff noted that "[t]he mere filing or maintenance of a lawsuit, even for improper purpose, is not 'abuse of process;' the party asserting the claim must plead some *willful act* taken by the other party in addition to the filing a Complaint." (Emphasis added.) Plaintiff further noted that "the *willful act* alleged must not be proper in the regular conduct of the proceedings." (Emphasis added.) Therefore, we conclude that Plaintiff properly preserved this issue for appeal. Accordingly, it is necessary to determine whether Plaintiff accurately stated the requisite elements of an abuse of process claim, and if so, whether Defendant adequately pleaded these elements in his counterclaim.

¶ 33 "[A]buse of process applies to '[o]ne who uses a legal process ... against another primarily to accomplish a purpose for which it is not designed.' " *Gilbert v. Ince*, 1999 UT 65, ¶ 17, 981 P.2d 841 (second and third alterations in original) (quoting Restatement (Second) of Torts § 682, at 474 (1997)); *see also Crease v. Pleasant Grove City*, 30 Utah 2d 451, 519 P.2d 888, 890 (1974) (noting that "the essence of [abuse of process] is a perversion of the process to accomplish some improper purpose"); *Kool v. Lee*, 43 Utah 394, 134 P. 906, 909 (1913) (1913) (" 'An abuse of legal process is where it is employed for some unlawful object not the purpose intended by law.' " (citation omitted)); William Prosser, Law of Torts, § 121, at 856 (4th ed.1971) (noting that abuse of process occurs when a "legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to

accomplish an ulterior purpose for which it was not designed"). "The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it." Restatement (Second) of Torts § 682 cmt. b (1977). In an action for abuse of process, " '[i]t is not necessary to show either malice or want of probable cause, nor that the proceeding had terminated, and it is immaterial whether such proceeding was baseless or not.' " *Kool*, 134 P. at 909 (citation omitted).

¶ 34 Abuse of process has two elements: " 'First, an ulterior purpose; second, an act in the use of the process not proper in the regular prosecution of the proceedings.' " *Id.* (citation omitted); *see also* William Prosser, Law of Torts, § 121, at 857 ("The essential elements of abuse of process ... have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding." (footnote omitted)). Accordingly, "if [legal process] is used for its proper and intended purpose, the mere fact that it has some other collateral effect does not constitute abuse of process." *Crease*, 519 P.2d at 890 (footnote omitted).

¶ 35 In both his original and amended counterclaim, the stated basis of Defendant's abuse of process claim was that Plaintiff's commencement of actions against him in federal and state court was "a perversion of the process in order to accomplish an improper purpose; that is, to intimidate the residents of the town as well as the town council to comply with [Plaintiff's] narrow and peculiar political and philosophical positions." Based on this statement, it is clear that Defendant alleged that Plaintiff had an ulterior motive or purpose for commencing the actions against him. However, it was not enough for Defendant to allege that Plaintiff was motivated by bad intentions when he filed the lawsuits against him. *See e.g., Keller v. Ray, Quinney & Nebeker*, 896 F.Supp.

---

14. Defendant also argues that Plaintiff failed to perfect the record and marshal the evidence on appeal. Again, this argument would be relevant only if we were to conclude that the trial court correctly denied Plaintiff's motion to dismiss.

1563, 1572 (D.Utah 1995) ("It is recognized that 'even a pure spite motive is not sufficient [to state a claim for abuse of process] where process is used only to accomplish the result for which it was created.' ") (alteration in original) (quoting Prosser and Keeton on the Law of Torts, § 121, at 897 (5th ed.1984)); *Lyons v. Midwest Glazing L.L.C.*, 235 F.Supp.2d 1030, 1042 (N.D.Iowa 2002) (noting 'that "there is no abuse of process when the action is filed to *intimidate* and embarrass the defendant knowing there is no entitlement to recover the full amount of damages sought." (emphasis added)); Restatement (Second) of Torts § 682 cmt. b (1977) (noting "there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant."). In order to state a cause of action for abuse of process, Defendant was also required to allege that Plaintiff had engaged in " 'an act in the use of the process not proper in the regular prosecution of the proceedings.' " *Kool*, 134 P. at 909 (citation omitted); *see also Lyons*, 235 F.Supp.2d at 1042 (noting that "[t]o establish improper use of process, plaintiff must show 'some act or threat directed to an immediate objective not legitimate in the use of the process' " (citation omitted)); *In re Terracor*, No. 81–00599, 1982 Bankr.LEXIS 3251, at *19 (Bankr. N.D.Utah Sept. 27, 1982) (noting that the test for abuse of process is "that there must be 'a wilful act in the use of the process not proper in the regular conduct of the proceeding' or '[s]ome definite act or threat not authorized by the process' " (alteration in original) (quoting William Prosser, Law of Torts, § 121, at 857–858)); [15] *Meidinger v. Koniag, Inc.*, 31 P.3d 77, 86 (Alaska 2001) (noting that mere filing of lawsuit, even for an improper purpose, is insufficient for abuse

of process action absent " '[s]ome definite act or threat not authorized by the process' " (citation omitted)); *Brown v. Kennard*, 94 Cal.App.4th 40, 113 Cal.Rptr.2d 891, 894 (2001) (noting that "abuse of process requires an act outside the purpose of the process" (footnote omitted)); *Vallance v. Brewbaker*, 161 Mich.App. 642, 411 N.W.2d 808, 810 (1987) (noting that in an action for abuse of process, "the improper ulterior purpose must be demonstrated by a corroborating act").

¶ 36 In this case, it is clear that in his counterclaim, Defendant has failed to plead any facts that would support an allegation that Plaintiff engaged in " 'an act in the use of the process not proper in the regular prosecution of the proceedings.' " *Kool*, 134 P. at 909 (citation omitted). Although Defendant did allege that Plaintiff had an ulterior motive or purpose for filing the actions against him, an "improper act may not be inferred from the motive." William Prosser, Law of Torts, § 121, at 858 (footnote omitted); *see also Keller*, 896 F.Supp. at 1571. Therefore, Defendant failed to state an essential element of his abuse of process claim. Accordingly, the trial court erred in denying Plaintiff's motion to dismiss Defendant's counterclaim for abuse of process.[16]

## III. Intentional Infliction of Emotional Distress

¶ 37 Plaintiff next argues that the trial court erred by failing to dismiss Defendant's claim for intentional infliction of emotional distress. According to Plaintiff, Defendant's claim for intentional infliction of emotional distress fails because (1) Defendant did not present sufficient evidence to demonstrate that Plaintiff's conduct towards him was outrageous; (2) Defendant did not commence his action within the four year statute of

15. *In re Terracor*, No. 81–00599, 1982 Bankr.LEXIS 3251 (Bankr.N.D.Utah Sept. 27, 1982), involved a counterclaim for abuse of process not unlike Defendant's, and was decided under Utah law. In their counterclaim, the defendants alleged—as a basis for their abuse of process action—that "suit was brought, not to obtain judgment against defendants, but 'for the purpose of *intimidation and coercion* to gain control over them in their capacities as officers of [debtors].' " *Id.* at *2 (alteration in original)

(emphasis added). The court granted the plaintiffs' motion to dismiss, noting that although the counterclaim alleged an ulterior motive, it did "not allege some act abusive of process in furtherance of this end." *Id.* at *22.

16. Because the trial court erred by failing to dismiss Defendant's abuse of process claim, it is unnecessary to consider Plaintiff's other arguments relating to this claim.

limitations time period; (3) a person claiming intentional infliction of emotional distress based on outrageous conduct directed toward another, cannot recover unless that person was present at the time of the outrageous conduct; and (4) Plaintiff had a First Amendment right to petition the government with his grievances.[17]

¶ 38 In response, Defendant argues that (1) Plaintiff failed to marshal the evidence in support of the verdict and fully perfect the record on appeal, and therefore it is impossible for this court to properly review Plaintiff's sufficiency claim; (2) the trial court did not err when it concluded that Defendant's claim fell within the statute of limitations period because the conduct upon which Defendant based his claim continued up to the time of trial; (3) special circumstances existed that justified relaxation of the rule requiring Defendant's presence at the time of the outrageous conduct toward Defendant's wife occurred; and (4) this court should not address Plaintiff's First Amendment argument because he failed to preserve this issue for appeal, and that in any event, the argument fails because harassment of a government official is not protected by the First Amendment.

### A. Statute of Limitations

¶ 39 Because it is a threshold question, we begin by addressing Plaintiff's statute of limitations argument. Plaintiff argues that the conduct that allegedly gave rise to Defendant's intentional infliction of emotional distress claim occurred in the early 1990's, and therefore the four year statute of limitations period had expired by the time Defendant filed his counterclaim in 1998. *See* Utah Code Ann. § 78–12–25(3) (2001). Plaintiff also argues that the jury should have been instructed on the statute of limitations period so they could determine whether Defendant's claim was timely filed. Defendant responds by arguing that because the conduct upon which Defendant based his claim continued up to the time of trial, the trial court did not err when it concluded that Defendant's claim fell within the statute of limitations period.

¶ 40 "Under Utah law, the statute of limitations begins to run when the cause of action accrues." *Retherford v. AT & T Communications of the Mountain States, Inc.*, 844 P.2d 949, 975 (Utah 1992). "A tort cause of action accrues when all its elements come into being and the claim is actionable." *Id.* In Utah, a claim for an intentional infliction of emotional distress is actionable if: (i) the defendant's conduct is outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (ii) the defendant intends to cause, or acts in reckless disregard of the likelihood of causing, emotional distress; (iii) the plaintiff suffers severe emotional distress; and (iv) the defendant's conduct proximately causes the plaintiff's emotional distress. *See id.* at 970–71.

¶ 41 In *Retherford*, the court considered when the statute of limitations began to run for an intentional infliction of emotional distress claim that arose from continued harassment by the plaintiff's coworkers. *See id.* at 953. The court noted that "emotional distress does not so much occur as *unfold*," when a plaintiff is not subjected "to a single outrageous act, but to a pattern or practice of acts tolerable by themselves though clearly intolerable in the aggregate." *Id.* at 975 (emphasis in original). Accordingly, the court held "that the statute of limitations for intentional infliction of emotional distress does not begin to run until the distress is actually inflicted, i.e., when the plaintiff suffers severe emotional disturbance." *Id.* The court concluded that the plaintiff began to

---

17. Plaintiff also argues that the trial court erred in allowing Defendant's expert to testify at trial because Plaintiff did not have an opportunity to depose the expert or review her reports. According to Plaintiff, he attempted to depose the expert in March 2002, just weeks before the trial, but that the expert never showed up. However, although the record reveals that Plaintiff filed a notice of deposition in which he indicated that he planned to depose Defendant's expert, there is no indication in the record as to why the expert was not deposed. Accordingly, it is impossible for us to determine whether Defendant refused to make the expert available or whether Plaintiff simply chose, for strategic reasons, not to depose her. However, the fact that immediately before the trial, Plaintiff renewed his motion to exclude the expert's testimony, strongly suggests that Plaintiff made a tactical decision not to take the expert's deposition.

experience severe emotional distress on the date she went on medical disability leave from her job and that this date fell within the statute of limitations period for a claim of intentional infliction of emotional distress. *See id.* at 976.

¶ 42 Like the plaintiff in *Retherford,* Defendant was allegedly harassed by Plaintiff over a period of several years. However, unlike the plaintiff in *Retherford,* Defendant did not seek medical or psychiatric treatment as a result of the harassment. Therefore, it is difficult to determine precisely when Defendant may have begun to experience severe emotional distress. Cognizant of this problem, the Utah Supreme Court in *Retherford* noted that "courts facing similar difficulties in adjudicating Title VII claims ... have enunciated a theory of continuing violation in order to allow plaintiffs to recover for patterns of employment discrimination." *Id.* at 976 n. 18. According to the court, "courts adjudicating Title VII claims allow recovery for an entire pattern of employment discrimination so long as one act of the violation occurs within the statute of limitations period." *Id.*

¶ 43 Other jurisdictions have relied on this approach when trying to determine when the statute of limitations begins to run for a claim of intentional infliction of emotional distress based on continuous harassing conduct. For example, the Illinois Supreme Court has held that a claim for intentional infliction of emotional distress is a "continuing tort," and therefore, "a plaintiff's cause of action accrues, and the statute of limitations begins to run, at the time the last injurious act occurs or the conduct is abated." *Feltmeier v. Feltmeier,* 207 Ill.2d 263, 278 Ill. Dec. 228, 798 N.E.2d 75, 85, 89 (2003); *see also Curtis v. Firth,* 123 Idaho 598, 850 P.2d

749, 755 (1993) (noting that "the concept of continuing tort ... should be extended to apply in other limited contexts, including particularly intentional infliction of emotional distress."); *McCorkle v. McCorkle,* 811 So.2d 258, 264 (Miss.Ct.App.2001) (noting that claim for intentional infliction of emotional distress was a continuing tort, and therefore, cause of action began to run from last date of injury); *Toles v. Toles,* 45 S.W.3d 252, 262 (Tex.Civ.App.2001) (stating that "because intentional infliction of emotional distress is considered a 'continuing tort,' the defendant's conduct throughout the parties' marriage may be considered.").

¶ 44 Adopting the reasoning of these cases, we hold that when conduct that would give rise to a claim of intentional infliction of emotional distress is continuous and ongoing, and it is unclear when the plaintiff suffered severe emotional distress, the statute of limitations begins to run from the time the last injury is suffered or the tortious conduct ceases.[18]

¶ 45 Based on the foregoing, we cannot conclude, as a matter of law, that Defendant's cause of action accrued more than four years prior to the date on which he filed his counterclaim because there is evidence in the record that the harassing conduct upon which Defendant based his claim continued until 1999, when Plaintiff again allegedly complained to Defendant's supervisors. Therefore, the trial court correctly denied Defendant's motion for summary judgment on this issue, although it did so for the wrong reason.[19] However, because there is a question of fact as to when Plaintiff's alleged harassment of Defendant ceased, and therefore, when Defendant's cause of action accrued, the trial court did err when it failed to instruct the jury on the four year statute

---

18. We note, however, that "continual ill effects from an initial violation" would not constitute a continuing tort. *Feltmeier,* 278 Ill.Dec. 228, 798 N.E.2d at 85. Accordingly, "where there is a single act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." *Id.*

19. In its order denying Plaintiff's motion for summary judgment, the trial court rejected

Plaintiff's statute of limitations argument on the basis that the lawsuit filed by Plaintiff against Defendant "caused [Defendant] to suffer emotional distress" within the statute of limitations period. However, the Utah Supreme Court has held that "[a]n allegation of improper filing of a lawsuit or the use of legal process against an individual is not redressable by a cause of action for intentional infliction of emotional distress." *Bennett v. Jones Waldo Holbrook & McDonough,* 2003 UT 9, ¶ 66, 70 P.3d 17 (Utah 2003).

of limitations period for a claim of intentional infliction of emotional distress. Accordingly, with respect to Defendant's claim for intentional infliction of emotional distress, we reverse and remand for a new trial.

### B. Sufficiency of the Evidence

¶ 46 Plaintiff, however, argues that Defendant's intentional infliction of emotional distress claim fails in its entirety because there was insufficient evidence to establish that his conduct was extreme and outrageous. In response, Defendant argues that this court should reject Plaintiff's argument because he did not marshal all the evidence in support of the verdict and because he failed to fully perfect the record on appeal.

¶ 47 Under the Utah Rules of Appellate Procedure, "[i]f the appellant intends to urge on appeal that a finding or conclusion is unsupported by or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion." Utah R.App. P. 11(e)(2); see also State v. Wetzel, 868 P.2d 64, 67 (Utah 1993) ("Parties claiming error below and seeking appellate review have the duty and responsibility to support their allegations with an adequate record."). Moreover,

> [u]nless the entire transcript is to be included, the appellant shall, within 10 days after filing the notice of appeal, file a statement of the issues that will be presented on appeal and shall serve on the appellee a copy of the request or certificate and a copy of the statement.

Utah R.App. P. 11(e)(3).

¶ 48 In this case, it is undisputed that Plaintiff failed to fully perfect the trial record. Specifically, Plaintiff failed to include the trial testimony of eleven of Defendant's witnesses. Moreover, there is no evidence that Plaintiff satisfied the requirements of rule 11(e). "Where the record before us is incomplete, we are unable to review the evidence as a whole and must therefore presume that the verdict was sup-

ported by admissible and competent evidence." Sampson v. Richins, 770 P.2d 998, 1002 (Utah Ct.App.1989) (quotations and citations omitted). Therefore, we reject Plaintiff's sufficiency of the evidence claim.[20]

### C. Presence Requirement[21]

¶ 49 Plaintiff argues that Defendant's claim for intentional infliction of emotional distress should have been dismissed because Defendant was not present when Plaintiff allegedly harassed Defendant's wife. In response, Defendant argues that special factual circumstances existed whereby presence at the time of the outrageous conduct toward Defendant's wife was not required.

¶ 50 Although this is an issue of first impression in Utah, we find the most recent Restatement of Torts to be instructive. The Restatement states that a person claiming intentional infliction of emotional distress based on outrageous conduct directed toward a family member cannot recover unless that person was "present at the time" of the outrageous conduct. Restatement (Second) of Torts § 46(2) (1965).

¶ 51 Defendant does not dispute that the alleged misconduct directed towards his wife took place outside his presence. He argues instead that the Restatement "leave[s] open the possibility of situations in which presence at the time [of the outrageous conduct] may not be required." Restatement (Second) of Torts § 46 cmt. l (1965). Defendant then cites three cases from other jurisdictions and claims that in these cases, the courts made exceptions to the presence requirement. However, in only one of these cases, Delia S. v. Torres, 134 Cal.App.3d 471, 184 Cal.Rptr. 787 (1982), did the court hold that a claim for intentional infliction of emotional distress could be made by an absent third party. See id. at 795. In Delia S., the court made an exception to the presence requirement because the claimed outrageous conduct was particularly egregious: the defendant, a close friend of the plaintiff, raped the plaintiff's

---

**20.** Concomitantly, given Plaintiff's failure to provide an adequate trial record, he also failed to properly marshal the evidence in support of the jury verdict.

**21.** We address this issue because it is likely to arise on remand.

wife. *See id.* The second case cited by Defendant, *Molien v. Kaiser Foundation Hospitals,* 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980), involved a claim for *negligent* infliction of emotional distress, and therefore, does not apply to this case. *See id.* at 832, 167 Cal.Rptr. 831, 616 P.2d 813. The final case cited by Defendant is *Foster v. Trentham's Inc.,* 458 F.Supp. 1382 (E.D.Tenn.1978), where the plaintiff brought an action for intentional infliction of emotional distress based on the malicious prosecution of her husband. *See id.* at 1383. Because it was not clear what outrageous conduct, if any, occurred in her presence, the court held that the allegation that her husband's arrest occurred at the plaintiff's home and that the alleged outrageous conduct was continuing in nature satisfied the Restatement's presence requirement *"for purposes of the motion to dismiss." Id.* at 1384 (emphasis added).

¶ 52 It appears based on the holding in *Delia S.* and case law from other jurisdictions, that the general rule favoring presence at the time of the outrageous conduct has only been held inapplicable under particularly compelling circumstances. *See, e.g., Croft by Croft v. Wicker,* 737 P.2d 789, 792–93 (Alaska 1987) (allowing recovery where houseguest molested plaintiffs' daughter although plaintiffs did not witness actual incident); *Schurk v. Christensen,* 80 Wash.2d 652, 497 P.2d 937, 940–41 (1972) (relaxing the presence requirement for plaintiffs whose child was molested by baby-sitter); *R.D. v. W.H.,* 875 P.2d 26, 33–34 (Wyo.1994) (noting exception to presence requirement where defendant sexually abused plaintiff's wife for several years and indirectly helped her commit suicide).

¶ 53 In the instant case, no such compelling circumstances exist, especially when there was no evidence presented that Defendant's wife was injured or suffered emotional distress as a result of Plaintiff's conduct. Therefore, the trial court erred by allowing Plaintiff's conduct toward Defendant's wife to be admitted as evidence at trial. Moreover, because the jury likely took this evidence into account when considering Defendant's intentional infliction of emotional distress claim, we conclude that Defendant was prejudiced by the admission of this evidence. Accordingly, on remand, no evidence of Plaintiff's conduct toward Defendant's wife should be admitted as part of Defendant's intentional infliction of emotional distress claim.[22]

### D. Right to Petition the Government with Grievances

¶ 54 Plaintiff argues that the trial court should have dismissed his intentional infliction of emotional distress claim because he has a First Amendment right to petition and criticize the government. According to Plaintiff, Defendant was not entitled to recover for emotional distress absent a showing, by clear and convincing evidence, that his criticism of Defendant was uttered with actual malice.

¶ 55 Defendant responds by first arguing that this court should not address Plaintiff's argument, because although Plaintiff made a First Amendment argument below, he did not specifically argue that Defendant must prove that Plaintiff's statements were made with "actual malice." Defendant also argues that in any event, Plaintiff's words and actions exceeded the limits of Plaintiff's First Amendment right to petition and criticize the government.

¶ 56 Absent plain error or exceptional circumstances, which Plaintiff has not argued, an appellate court will not consider an issue—even a constitutional issue—which is raised for the first time on appeal. *See* Utah R.App. P. 24(j); *State v. Archambeau,* 820 P.2d 920, 922 (Utah Ct.App.1991). An issue is properly raised in the trial court if: (1) the issue is raised in a timely fashion; (2) the issue is specifically raised; and (3) the issue is supported by evidence or relevant legal authority. *See Badger v. Brooklyn Canal Co.,* 966 P.2d 844, 847 (Utah 1998).

¶ 57 In his motion for summary judgment and his motion in limine, Plaintiff

---

22. Because evidence of Plaintiff's conduct toward Defendant's wife only partially supported Defendant's intentional infliction of emotional distress claim, we reject Plaintiff's assertion that admission of such evidence requires outright dismissal of Defendant's claim.

made a generalized argument that his conduct towards Defendant was protected by his First Amendment right to petition the government. However, in neither motion did Plaintiff cite to any relevant authority that supported this proposition. Moreover, Plaintiff did not argue that Defendant was required to prove that Plaintiff's statements were made with "actual malice." Therefore, Plaintiff's First Amendment argument was not properly preserved for appeal because it failed to meet the requirements of specificity and citation to authority. *See id.* Accordingly, we decline to address this argument on appeal.

## CONCLUSION

¶ 58 We conclude that the trial court erred in failing to dismiss Defendant's counterclaim for malicious prosecution prior to trial because the prior proceeding had not been terminated in Defendant's favor. We also conclude that the trial court erred in failing to dismiss prior to trial Defendant's counterclaim for abuse of process because Defendant failed to plead a necessary element of that claim, i.e., that Plaintiff had engaged in an act in the use of the process not proper in the regular prosecution of the proceedings.

¶ 59 With respect to Defendant's claim for intentional infliction of emotional distress, we conclude that the trial court correctly rejected Plaintiff's argument that Defendant's claim was time-barred as a matter of law. However, because the timing of when Defendant's claim for intentional infliction of emotional distress accrued presents a question of fact, the trial court erred by not instructing the jury on the four year statute of limitations period. We decline to consider Plaintiff's argument that there was insufficient evidence to establish that his conduct was extreme and outrageous because Plaintiff failed to fully perfect the record on appeal. We conclude the trial court erred by admitting evidence of Plaintiff's conduct towards Defendant's wife that occurred outside Defendant's presence because a person claiming intentional infliction of emotional distress based on outrageous conduct directed toward another cannot recover unless that person was present at the time of the outrageous conduct. Finally, we decline to address Plaintiff's argument that he had a First Amendment right to petition the government because he failed to properly preserve this issue for appeal.

¶ 60 Accordingly, we reverse the jury's verdict in favor of Defendant on his abuse of process claim. We also reverse the jury verdict in favor of Defendant on his intentional infliction of emotional distress claim and remand for a new trial and other proceedings consistent with this opinion.

¶ 61 WE CONCUR: NORMAN H. JACKSON and WILLIAM A. THORNE JR., Judges.