**2017 UT App 112**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
DARRELL WAYNE MORRIS,
Appellant.

Opinion
No. 20150187-CA
Filed July 7, 2017

Fourth District Court, Provo Department
The Honorable Derek P. Pullan
No. 111401543

Neil Skousen, Attorney for Appellant

Sean D. Reyes and Christopher D. Ballard, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and MICHELE M. CHRISTIANSEN concurred.

ORME, Judge:

¶1      Defendant Darrell Wayne Morris appeals the trial court's
order in which it denied his motion to quash a subpoena and
found him in contempt of court for his refusal to testify. We
affirm.

BACKGROUND

¶2      This case arises out of an act of gang retaliation against an
informant (Victim). The retaliation, perpetrated by Danny Leroy

Logue and Morris, resulted in Victim's death.[1] While serving a prison sentence for an unrelated crime, Morris was involved with a prison gang that had instructed him, upon his release from prison, to assault Victim as revenge for Victim's having "snitched" to the police. Morris recruited Logue to help him complete the task. Logue agreed to help; then he shot and killed Victim. In exchange, the gang paid Morris and Logue in methamphetamine. The State charged them both with conspiracy to commit aggravated murder, a first degree felony; aggravated murder, a first degree felony; purchase, transfer, possession or use of a firearm by a restricted person, a second degree felony; obstruction of justice, a second degree felony; seven counts of possession of a controlled substance with intent to distribute, first degree felonies; manufacture of a vehicle compartment for contraband, a third degree felony; and possession of a controlled substance, a second degree felony.

¶3    Morris entered into plea negotiations with the State in connection with his role in Victim's death. The State first made an offer to Morris that would have prevented it from calling him as a witness in Logue's trial if he pled guilty to certain crimes, but Morris believed those crimes were too severe and declined the deal. The State then made a second offer that reduced Morris's charges to manslaughter, a second degree felony; obstruction of justice, a second degree felony; and possession of a dangerous weapon by a restricted person, a third degree felony. Although the offer did not obligate Morris to testify in Logue's trial, it did not excuse him from doing so, either. Morris

---

1. The events germane to this appeal arose during Logue's trial for his role in Victim's death. The jury convicted Logue, without Morris's testimony, and Logue's appeal is pending in this court. *See State v. Logue*, 20151092-CA. In deciding Morris's case, we rely on the trial court's findings in its contempt order and the trial record as it relates to Morris.

agreed to the second deal, pled guilty to each of those counts, and was sentenced accordingly.

¶4    Meanwhile, Logue's case advanced to trial. During trial, a subpoenaed witness (Witness) testified that he had been a member of the gang and that Logue confessed to him while they were both in prison. Witness conveyed the details of the homicide as told to him by Logue. He also testified that he was violating gang rules by doing so, risking being beaten or otherwise injured. Nonetheless, Witness acknowledged that he was still in prison and was testifying voluntarily and without any promised benefit in exchange for his testimony, though he hoped the Board of Pardons and Parole would favorably consider his willingness to testify and grant him early release so he could leave Utah.

¶5    Morris also received a subpoena to testify against Logue. Upon receiving the subpoena, Morris wrote the prosecution, objecting to the subpoena and expressing his belief that his plea deal did not require him to testify. Morris later filed a motion to quash, arguing that if the State could call Morris at all, it could only be as a rebuttal witness after Logue had testified. Morris also contended there were procedural problems with the subpoena, including that his counsel did not receive notice of the subpoena; that he believed he had agreed to a plea deal that would not require his testimony; that he was protected from testifying by the Fifth Amendment; and that he feared for his safety if he testified, necessitating the State and court to provide him protection. The State responded by granting Morris immunity from the use of his testimony against him.

¶6    The trial court then heard oral argument regarding the motion to quash, during which Morris's counsel addressed only the issues of notice and whether the plea deal required Morris's testimony. A brief discussion regarding Morris's fear of retaliation occurred, but it was actually initiated by the

prosecutor, not Morris's counsel. The court found that there was no requirement that Morris's counsel receive notice of the subpoena, that any procedural errors had been cured, that Morris's plea deal left open the possibility for the State to compel Morris's testimony, and that "Morris may have legitimate fears of retaliation if he testifies, [but] that is not a basis for a subpoena being quashed."

¶7     The court resolved the Fifth Amendment issue by relying on the Department of Justice's "Dual or Successive Prosecution Policy," known as the Petite Policy. In the court's view, the policy "precludes the initiation or continuation of a federal prosecution following a prior state or federal prosecution based on substantially the same acts or transactions unless" there is both a "substantial federal interest" that was "demonstrably unvindicated" by the first prosecution and a federal offense for which the prosecution has enough evidence to obtain a conviction. The court concluded that this policy rendered Morris's fear of further prosecution "fanciful and merely speculative." Thus, it concluded that Morris had no Fifth Amendment privilege and denied his motion to quash.

¶8     Upon denial of his motion to quash, Morris was called as a witness and was warned, outside the presence of the jury, that he had no Fifth Amendment privilege and that failure to testify would prompt the trial court to adjudge him in contempt of court. But once questioning before the jury began, Morris took the stand, indicated to the court that he had discussed the subpoena with his counsel, and refused to testify. Then, out of the presence of the jury, the trial court found Morris in contempt. The trial court ordered him to pay a $1,000 fine and serve thirty days in the county jail, the contempt incarceration to

run consecutively with his existing prison sentence. Morris appeals.[2]

ISSUES

¶9    On appeal, Morris argues that the trial court erred in denying his motion to quash the subpoena and holding him in contempt of court when he refused to testify. Morris contends (1) that the court failed to adequately consider the "substantial risk of bodily harm or death" that he feared he would face "if he testified in [Logue's] trial" and failed to protect him from retaliation and (2) that the court wrongly concluded that he "had no Fifth Amendment privilege to assert as a reason to not testify at [Logue's] trial."

ANALYSIS

I. Risk of Bodily Harm or Death

¶10    On appeal, Morris contends that the trial court "failed to address the issue of Morris being at substantial risk of bodily harm or death if he testified." Specifically, he argues that the trial court failed to consider that his need for safety outweighed the State's need for his testimony, suggesting that because Logue was convicted without his testimony, his testimony was redundant and unnecessary. He also claims that the trial court was obligated to quash the subpoena in order to protect him from the dangers of retaliation that he believed would arise if he testified. As noted, although the prosecutor briefly touched upon Morris's concern about retaliation during argument on Morris's

---

2. Sometime later, the State charged Morris with obstruction of justice, a second degree felony, for his refusal to testify. That case has been stayed in the district court pending this appeal.

motion to quash, Morris failed to adequately develop this argument.

¶11 "We generally will not consider an issue unless it has been preserved for appeal." *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828. "[T]o preserve an issue for appeal, the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 14, 48 P.3d 968. "[T]he trial court had a legally sufficient opportunity to rule on the issue" if "the issue was raised in a timely and specific manner along with 'supporting evidence or relevant legal authority.'" *State v. Howell*, 2016 UT App 90, ¶ 13, 374 P.3d 1032 (quoting *Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366).

A.     Court's Obligation To Weigh Morris's Risk Against the State's Need for His Testimony

¶12 Morris did not raise with the trial court the argument that his fear of retaliation outweighed the prosecution's need for his testimony. His motion dedicated a mere two sentences—of a nine-page motion—to his fear of retaliation given "the dangerous circumstances of the prison environment." Those two sentences insisted that the court "is well aware" that other witnesses were threatened during the course of the Logue prosecution and that Morris himself would be "at risk of suffering substantial bodily harm or death" if he testified.[3]

_____

3. Even if Morris's argument on appeal were that his fear alone justified quashing the subpoena, he did not provide the trial court with specific evidence of threats against him. All that Morris has articulated—below and on appeal—is a generalized fear of retaliation by members of his former gang based on the fact that the underlying case involved gang retaliation; he does not point to any specific threats. And a generalized fear is not a

(continued…)

Morris did not provide details about the nature of the risk, nor did he proffer evidence of actual threats he or other witnesses had received. He also did not argue that his testimony was unnecessary to convict Logue, which would have been a matter of speculation prior to Logue's trial and conviction. And Morris failed to provide the trial court with authority supporting his theory that the trial court was obligated to weigh his fear against the need for his testimony.[4] His "generalized argument[s]" were

_____

(…continued)
sufficient defense for violating the law, *cf. State v. Harding*, 635 P.2d 33, 35 (Utah 1981) (concluding that a defendant was not justified in escaping from prison even though other inmates had threatened his life), or for refusing to testify when compelled, *see Piemonte v. United States*, 367 U.S. 556, 559 n.2 (1961) (noting that "fear of reprisal" does not relieve an immunized person of his or her obligation to testify); *United States v. Doe* (*In re* Grand Jury Proceeding), 13 F.3d 459, 461 (1st Cir. 1994) (per curiam) ("[I]t has been widely held that a witness' fear of reprisal against himself or his family does not constitute just cause for refusing to testify."). Otherwise, the authority and decisions of the courts of this state would be subject to the superseding authority of the gangs in our prison system—a proposition that is untenable, as Morris conceded during oral argument. Thus, fear alone does not support quashing his subpoena.

4. In his reply brief, Morris claims he did not have to raise his argument for weighing fear against the State's need for his testimony because "'weighing' is accomplished as a final determination of the court, not something specifically requested." But he provides no citation to support this assertion. And while "[t]he court may quash or modify the subpoena if compliance would be unreasonable," Utah R. Crim. P. 14(a)(2), rule 14 does not compel the court to act in any particular manner, nor has Morris shown that the court would have found

(continued…)

inadequate to preserve his claim because he "failed to meet the requirements of specificity and citation to authority." *See Hatch v. Davis*, 2004 UT App 378, ¶ 57, 102 P.3d 774. *See also State v. Rangel*, 866 P.2d 607, 612 (Utah Ct. App. 1993) (determining that "vague objections" "were not specific enough to properly raise and preserve [the argument] for appeal"). And because he has not argued any exception to our preservation doctrine,[5] we will not consider this claim further.

---

(…continued)
that compelling him to testify would have been unreasonable if it had weighed his fear against the need for his testimony.

5. We will consider an unpreserved claim only if the appellant demonstrates that one of the exceptions to our preservation doctrine has been satisfied. *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. In his reply brief and at oral argument, Morris belatedly suggested that the trial court committed plain error when it denied the motion to quash because, given that the trial itself was about gang retaliation against an informant, the court should have recognized the risk and acted to protect him by granting the motion to quash. But the obviousness of any error in this regard was likely diminished by Witness having testified willingly and with no promise of protection; by Morris's own willingness to testify as a rebuttal witness without any explanation as to why rebuttal testimony would be viewed more generously by retaliation-minded gang members than case-in-chief testimony; and by the fact that in his letter to the prosecution, in his motion, and during oral argument, Morris emphasized issues of procedural fairness and made little mention of his fear. *See id.* ¶ 13 (requiring a party who claims plain error to show that the error was both obvious and harmful). Thus, even had he timely argued that the plain error exception applied, it is unlikely that any error on the part of the trial court would have met the plain error standard.

B.      Trial Court's Obligation To Protect Morris

¶13     Likewise, Morris did not preserve his argument that the trial court's duty to protect him obligated it to quash his subpoena. While his motion to quash did claim that the court and the State owed him protection, the motion included no explanation of what protection he sought and outlined no legal authority supporting his claim. Rather, he simply cited rule 45 of the Utah Rules of Civil Procedure[6] as proof that the State and the court "have an obligation . . . to ensure and protect Mr. Morris' safety and well-being."

¶14     Rule 45 requires that "[t]he party or attorney responsible for issuing a subpoena . . . take reasonable steps to avoid imposing an undue burden or expense on the person subject to the subpoena" and that "[t]he court . . . enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include . . . lost earnings and a reasonable attorney fee." Utah R. Civ. P. 45(e)(1). The rule speaks in terms of limiting the burden on the subpoenaed witness, but it does not contemplate relieving the witness of the obligation to testify. *See id.* R. 45(e)(3). *See also id.* R. 37(a)(1), (7) (permitting a party to "request that the judge enter an order regarding any discovery issue," including a rule 45 subpoena, and permitting the court to "enter orders . . . to protect a party or person from discovery being conducted in" a harmful manner by limiting the

---

6. Reliance on a rule of civil procedure in this criminal case is not necessarily incorrect. *See* Utah R. Civ. P. 81(e) ("These rules of procedure shall also govern in any aspect of criminal proceedings where there is no other applicable statute or rule, provided, that any rule so applied does not conflict with any statutory or constitutional requirement."). *But see* Utah R. Crim. P. 14 (supplementing Utah R. Civ. P. 45 in the context of criminal cases).

discovery method, but not by quashing a subpoena). Thus, while his argument could have prompted the court to consider whether the State was required to provide protection to Morris in assessing whether mandating compliance with the subpoena was reasonable, *see* Utah R. Crim. P. 14(a)(2), the argument did not provide the court with the guidance necessary to conclude that it was obligated to quash if the State failed to take steps to protect the witness. Without a more specific argument regarding the nature of the threat, the court's duty to protect, or citations to legal authority supporting such an argument, the trial court did not have an obligation to do what Morris now insists it should have done. Because Morris "failed to meet the requirements of specificity and citation to authority," *see Hatch*, 2004 UT App 378, ¶ 57, and because he failed to adequately preserve his argument, we decline to consider it further.

## II. Fifth Amendment Privilege

¶15   Morris also contends that his testimony was privileged under the Fifth Amendment, claiming that the trial court erred by requiring him to testify and holding him in contempt when he refused to do so. Whether testimony is privileged under the Fifth Amendment is a question of law, which we review for correctness. *See State v. Daniels*, 2002 UT 2, ¶ 37, 40 P.3d 611 ("[C]onstitutional interpretation presents questions of law."); *Price v. Armour*, 949 P.2d 1251, 1254 (Utah 1997) ("The existence of a privilege is a question of law for the court, which we review for correctness[.]"). "We . . . review a trial court's findings of fact under the deferential clearly erroneous standard." *Daniels*, 2002 UT 2, ¶ 18.

¶16   The Fifth Amendment to the United States Constitution protects individuals from twice "be[ing] subject for the same offence to . . . jeopardy of life or limb" and from "be[ing] compelled in any criminal case to be a witness against" themselves. U.S. Const. amend. V. Double Jeopardy protection

does not, however, preclude prosecutions by separate sovereigns. *See United States v. Lanza*, 260 U.S. 377, 382 (1922) ("[A]n act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each."). *But see State v. Robertson*, 2017 UT 27, ¶ 44 (noting that a prosecution in one jurisdiction precludes prosecution in another if the prior prosecution results "'in an acquittal, conviction, or termination'" and is "'for the same offense or offenses'") (quoting Utah Code Ann. § 76-1-404 (LexisNexis 2012)). Thus, Morris argues that while the State may not be able to further prosecute him for his participation in the retaliation against Victim, he remains exposed to prosecution by the federal government. He claims that any testimony he might have given in Logue's trial would have been self-incriminating and is therefore privileged under the Fifth Amendment.

¶17 We disagree. Morris need not fear prosecution from the federal government. Before he was called to testify in Logue's trial, the prosecution delivered to Morris's counsel a grant of use immunity, which prohibited any prosecutorial use of his testimony or evidence gained from it. According to the Utah Supreme Court, when "a State compels an individual to testify through a grant of immunity, the federal government is prohibited from then using that testimony or its fruits against the witness in a federal prosecution." *State v. Bond*, 2015 UT 88, ¶ 26, 361 P.3d 104.

¶18 In *Bond*, the Court considered whether the prosecution had committed misconduct by calling a witness it knew would claim a Fifth Amendment privilege against self-incrimination. *Id.* ¶ 22. There, the witness refused to testify against his co-conspirator despite having reached a plea agreement in his own case and, eventually, he received use immunity from the State in exchange for his compelled testimony. *Id.* ¶¶ 18–19. The Court concluded that the witness's testimony was not privileged because there was no possibility of self-incrimination, despite

the witness's expressed concern about potential federal charges, and thus that there was no prosecutorial misconduct. *Id.* ¶¶ 26–27. Because the United States Supreme Court had previously determined that the Fifth Amendment privilege extends to both state and federal prosecutions and that prosecutors have the ability to compel testimony in exchange for immunity, even where the testimony would otherwise be privileged, the Utah Supreme Court concluded that any such grant of immunity must also extend to both sovereigns. *Id.* ¶ 26. *See also Kastigar v. United States*, 406 U.S. 441, 453 (1972) ("Immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom, affords this protection. It prohibits the prosecutorial authorities from using the compelled testimony in *any* respect[.]") (emphasis added). Under *Bond*, the State's granting Morris use immunity nullified his privilege because it foreclosed any subsequent prosecutions, state or federal, growing out of this criminal episode.[7] *See Bond*, 2015 UT 88, ¶¶ 26–27. Thus, he had no Fifth Amendment privilege to assert.

---

7. The trial court relied on the fact that federal prosecutorial practice guides suggest that Morris had no reasonable concern that he would be federally prosecuted. As the trial court noted, the Department of Justice's longstanding Petite Policy generally prohibits "a federal prosecution . . . except when necessary to advance compelling interests of federal law enforcement." *Rinaldi v. United States*, 434 U.S. 22, 28 (1977) (per curiam). *See generally Petite v. United States*, 361 U.S. 529 (1960). "Although not constitutionally mandated, this Executive policy serves to protect interests which, but for the 'dual sovereignty' principle inherent in our federal system, would be embraced by the Double Jeopardy Clause." *Id.* at 29. But as Morris points out, the Petite Policy "is discretionary by the prosecuting arm of the government . . . [and] is not law." *See United States v. Catino*, 735 F.2d 718, 725 (2d Cir. 1984). It "does not confer any enforceable rights upon criminal defendants." *United States v. Barrett*, 496

(continued…)

## CONCLUSION

¶19    We affirm the trial court's refusal to quash the subpoena, as well as its contempt judgment and sanction.

––––––––––––

(…continued)

F.3d 1079, 1120 (10th Cir. 2007). Nevertheless, our departure from the trial court's exact reasoning is permissible, as we can affirm "on any legal ground or theory apparent on the record." *Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 (citation and internal quotation marks omitted). In essence, the trial court's decision was on even firmer legal ground than it realized.