FILED
United States Court of Appeals
Tenth Circuit

**February 24, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RON RUSAKIEWICZ and PAUL
SPERA,

Plaintiffs-Appellants,

v.

JOHN LOWE, DAVID NORRIS, SR.,
SHIRLEY SHAW, JOHN P. WOLFE,
and THE VETERANS OF FOREIGN
WARS OF THE UNITED STATES,
Department of California,

Defendants-Appellees.

No. 07-4289

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. NO. 2:06-CV-1021-DB)**

---

Gregory W. Stevens, Attorney at Law, Salt Lake City, Utah, for Plaintiffs-
Appellants.

David N. Kelly (Rachel G. Terry with him on the brief), Fabian & Clendenin, Salt
Lake City, Utah, for Defendants-Appellees.

---

Before **McCONNELL**, **EBEL**, and **GORSUCH,** Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

Ron Rusakiewicz and Paul Spera, the plaintiffs and appellants in this case, are or were members of the Veterans of Foreign Wars of the United States (VFW). They distributed fliers at the 2005 VFW convention in Salt Lake City accusing defendant-appellee John Lowe and other officers of the California Department of the organization of fraud in connection with the organization's membership rolls. Mr. Lowe sued Mr. Rusakiewicz and Mr. Spera for defamation in state court in Utah. The defamation suit was later dismissed with prejudice by agreement of the parties. Mr. Rusakiewicz and Mr. Spera then filed this suit against Mr. Lowe and other officers of the California Department of the VFW, claiming that the defamation suit amounted to abuse of the legal process and unlawful use of civil proceedings. The district court dismissed their complaint, holding that the court did not have personal jurisdiction over the individual defendants other than Mr. Lowe and that the complaint did not state a claim for which relief may be granted. Mr. Rusakiewicz and Mr. Spera appeal. We reverse the district court's holding as regards jurisdiction. We affirm its dismissal of the abuse of process and wrongful use of civil proceedings claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In August 2005, Mr. Rusakiewicz and Mr. Spera attended a VFW conference in Salt Lake City, Utah. There they distributed fliers making accusations of fraud and misconduct against some individual officers of the California Department of Veterans of Foreign Wars (VFWCA). The fliers

claimed that some VFWCA officers had hacked into computers at the National VFW and converted the names of some National VFW members into VFWCA members—improperly augmenting the member rolls (and the coffers) of the VFWCA. John Lowe, one of those accused, served a complaint on the two men, maintaining that he had been defamed and asking for damages. Before filing suit, Mr. Lowe consulted with other officers of the VFWCA in Salt Lake City about the suit. The other officers, including defendants-appellees Shirley Shaw, David Norris, and John Wolfe, offered their support to Mr. Lowe regarding his lawsuit and agreed to use VFWCA funds to pay Mr. Lowe's legal expenses. Mr. Lowe, however, was the sole plaintiff in that suit.

Mr. Lowe attempted to reach a "compromise agreement" with Mr. Rusakiewicz and Mr. Spera. He proposed that the two men agree to "make no comments or communication of any nature" relating to "alleged criminal action or other violations of the law" in connection with the VFW membership matter, in return for his dropping his suit for damages. Mr. Rusakiewicz and Mr. Spera rejected the proposed compromise agreement. After some back and forth, and with consent from the defamation defendants, Mr. Lowe later voluntarily dismissed his complaint with prejudice.

Several months after the defamation action was dismissed, Mr. Rusakiewicz and Mr. Spera filed a complaint for damages against Mr. Lowe in the United States District Court for the District of Utah, alleging that his defamation suit was

3

an abuse of process and an unlawful use of civil proceedings. The plaintiffs joined Ms. Shaw, Mr. Norris, Mr. Wolfe, and the VFWCA as defendants for allegedly "authoriz[ing], approv[ing], ratify[ing], and/or institut[ing] the wrongful civil action" of Mr. Lowe's. The jurisdictional basis for the lawsuit was diversity of citizenship, under 28 U.S.C. § 1332(a)(1). Mr. Rusakiewicz and Mr. Spera are citizens of Connecticut and Massachusetts, respectively, Mr. Lowe and the other VFWCA officers are citizens of California, and the VFWCA is incorporated in California. The defendants filed a motion to dismiss, asserting lack of personal jurisdiction over Ms. Shaw, Mr. Norris, and Mr. Wolfe (whom we will generally call "the VFWCA defendants"), and contending that the complaint had failed to state a claim for abuse of process and unlawful use of civil proceedings under Utah common law. They did not contest the court's jurisdiction with respect to Mr. Lowe or the VFWCA.

The district court granted the motion to dismiss, finding it lacked jurisdiction over the VFWCA defendants. The district judge said to plaintiffs' counsel below that if he

> had the facts to support some notion that they [Ms. Shaw, Mr. Norris, and Mr. Wolfe] were colluding with Mr. Lowe to file a baseless lawsuit in Salt Lake, well, then there would be jurisdiction over them. There would be enough information to suggest that they committed a tort [in Utah], at least enough basis for going forward . . . . But I didn't see that you have anything like that.

R. 118.

4

With respect to the claims against the remaining defendants, Mr. Lowe and the VFWCA, the court held that there was an "insufficient legal basis to support either a claim for abuse of process or a claim for unlawful use of civil proceedings." The court explained that the claim for abuse of process "fail[ed] for lack of an allegation of a wilful act independent of the legal process" and that the claim for unlawful use of civil proceedings failed "because the prior case was not terminated on the merits" in favor of Mr. Rusakiewicz and Mr. Spera.

## II. JURISDICTION

We review de novo the district court's finding that it lacked jurisdiction over the VFWCA defendants Ms. Shaw, Mr. Norris, and Mr. Wolfe. *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005). "Where . . . there has been no evidentiary hearing," as in this case, "and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Elec. Realty Assocs., L.P. v. Vaughan Real Estate*, 897 F. Supp. 521, 522 (D. Kan. 1995); *see also Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999). All factual disputes are resolved in favor of the plaintiffs when determining the sufficiency of this showing. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

To establish personal jurisdiction over the VFWCA defendants, the plaintiffs had to show, first, that jurisdiction is authorized under Utah law and,

5

second, that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment. *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995). The defendants initially try to make the case that jurisdiction over the VFWCA defendants is barred under Utah law because the "purpose" of Utah's long-arm statute is to protect Utah citizens and residents, and no party to the present litigation is a Utah citizen or resident. This attempt is unavailing.

It is true that Utah's long-arm statute has a "purpose" clause that states that the provisions of the long-arm statute are intended "to ensure maximum protection to *citizens* of" Utah. Utah Code Ann. 1953 § 78B-3-201(3) (emphasis added). But the remainder of that clause says that the provisions of the statute should be applied "so as to assert jurisdiction over nonresident defendants to the fullest extent" permitted by the Fourteenth Amendment of the U.S. Constitution. And the Utah Supreme Court has explicitly said that "any set of circumstances that satisfied due process will also satisfy the long-arm statute." *SII MegaDiamond, Inc. v. Am. Superabrasives Corp*., 969 P.2d 430, 433 (Utah 1998). This collapses the Utah standard into the more general "due process" standard for jurisdiction. As we have put it before, our jurisdictional inquiry in Utah diversity cases is reduced to a single question: did the defendants have sufficient "minimum contacts" with the state of Utah to establish personal jurisdiction over them? *Fidelity & Cas. Co. of New York v. Philadelphia Resins Corp*., 766 F.2d 440, 442

6

(10th Cir. 1985).[1]  We conclude that they did.

The plaintiffs point to the minutes of a January 2007 VFWCA meeting at which the organization's Deputy Advocate stated that the defamation suit "was approved in an Ad Hoc meeting in Salt Lake City by all of the officers then present."  He stated that the "Department" (meaning the VFWCA) "paid for" the filing of the lawsuit.  Mr. Lowe admitted that he had spoken with the VFWCA defendants about filing the lawsuit.  These defendants were all present at the VFWCA meeting, they were all officers, they all voted to fund the lawsuit, and they more generally "authorized" and "approved" of it.

We start the due process/minimum contacts analysis by seeking to find "some act by which the defendant[s] purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State[.]" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  Merely "random, fortuitous or attenuated contacts" will not be sufficient to establish jurisdiction.  *Id.* (internal citations omitted).  It appears that the contacts the VFWCA defendants made were neither random nor fortuitous nor attenuated.

It is well established that the act of filing a lawsuit in a particular state is sufficient to establish jurisdiction over the plaintiff in the courts of that state in a

---

[1]Although neither parties' briefs explicitly mention it, we assume the jurisdictional claim here to be based on "specific" rather than "general" jurisdiction, which involves showing that the suit "arises out of" a defendant's contacts with the forum state.  *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984).

subsequent action for abuse of process or similar torts. *See Neuralstem, Inc. v. StemCells, Inc.*, 573 F. Supp.2d 888, 897–98 (D. Md. 2008) (collecting cases in which a party "essentially consents" to jurisdiction in the forum state through the "act of filing a previous suit where the second suit arises from the 'same transaction'"). Jurisdiction is thus clear as to Mr. Lowe. Ms. Shaw, Mr. Norris, and Mr. Wolfe were not plaintiffs in the defamation lawsuit, but they were part of an ad hoc decision-making "team" that agreed that Mr. Lowe should file a lawsuit against Messrs. Rusakiewicz and Spera in Utah, and that he should do it forthwith. Not only did they discuss the suit with Mr. Lowe and give it their approval in advance, but they appropriated VFWCA money to fund it. These discussions and votes took place in Utah.

Other courts have found the act of authorizing and directing a lawsuit to be enough to establish jurisdiction over officers of a corporation. For example, in *Mobil Oil Corp. v. Advanced Environmental Recycling Technologies*, 833 F. Supp. 437, 446 (D. Del. 1993), a Delaware district court found that the officers of a corporation who "directed" the filing of a lawsuit in Delaware were subject to personal jurisdiction there. In that case, the court found jurisdiction even though none of the acts that "directed" or "authorized" the lawsuit were conducted in Delaware. *Id*. at 443–44. The court held that by "authorizing and directing the filing of Mobil's declaratory judgment lawsuit in Delaware, [the corporate officers] purposefully availed themselves of the benefits and protections of

8

Delaware." *Id*. at 446.  This case is the same, except that the decisions to authorize and support the lawsuit were made in the forum state, which makes the argument for jurisdiction that much stronger.[2]

But *Mobil Oil* is still a step removed from the facts of our case.  In *Mobil Oil*, the defendant corporate officers authorized a lawsuit in which the corporation itself was the plaintiff.  Here, the officers supported Mr. Lowe's decision to file the defamation lawsuit and authorized the payment of VFWCA corporate funds to defray its costs, but the corporation was not a plaintiff.  The parties have not cited cases involving this factual scenario, and we have not located any.  Nonetheless, we think it must be true that those who support and authorize funding of intentional tortious conduct must be subject to personal jurisdiction in the state where the tort took place and where they committed the acts that supported the tort.  If a group of corporate officers voted to appropriate corporate money to fund a bank robbery in Utah, we think the minimum contacts would be sufficient to permit the state court to assume jurisdiction even though they took no part in the actual hold-up.

If a defendant's actions have created sufficient "minimum contacts," we must still go on to consider "whether the exercise of personal jurisdiction over the

---

[2] We have no occasion to determine whether the fact that the VFWCA defendants made their decisions in Utah is necessary to a finding of minimum contacts, or whether it was sufficient that defendants authorized a Utah lawsuit, as *Mobil Oil* suggests.

defendant offends traditional notions of fair play and substantial justice." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (internal quotations omitted). But if we find that there have been minimum contacts (as we have), the burden is on the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. Such cases are rare. "Traditional notions of fair play and substantial justice" are said to comprise five factors: the burden on the defendant, the forum state's interest in resolving the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental social policies. *Id*. at 476.

It is scarcely unfair to make those who have initiated a lawsuit in a particular state undergo suit in that state to determine whether the lawsuit was tortious. If Ms. Shaw, Mr. Norris, and Mr. Wolfe, along with Mr. Lowe, regarded Utah as a suitable forum for *their* suit, it cannot be unfair for them to be sued in the same forum on the basis of that original suit. The other factors either support or do not cut strongly against this conclusion. It therefore does not run afoul of traditional notions of justice and fair play to find jurisdiction over the VFWCA defendants in Utah.

The defendants object that the plaintiffs are trying to assert jurisdiction

10

"solely on their actions as VFWCA officers in authorizing VFWCA funds to reimburse Lowe for his legal fees." Appellee's Br. 39. They continue that Ms. Shaw, Mr. Norris, and Mr. Wolfe "met *in their capacities as officers* of the VFWCA in order to decide whether to authorize Lowe's legal fees," *id*. at 40 (emphasis added), and that it is "hornbook" that officers and employees of a non-profit are not personally liable for acts done in their capacities as officers. *Id*. at 38-39. They cite our decision in *Ten Mile Industrial Park v. Western Plain Service Corp.,* 810 F.2d 1518, 1527 (10th Cir. 1987) for the proposition that, where acts are performed by individuals in their corporate capacities, "the corporate structure will ordinarily insulate the individuals from the court's jurisdiction." Appellee's Br. 39.

We think that the defendants are reading *Ten Mile* incorrectly. *Ten Mile* held that the court lacked jurisdiction over an "executive committee" of a corporation for the contacts made by the corporation. *Id*. at 1526–27. The rationale was that an officer in a corporation is not personally liable for all the acts of the corporation: "[j]urisdiction over the representatives of a corporation may not be predicated on jurisdiction over the corporation itself . . . ." *Id*. at 1527; *see also Wegerer v. First Commodity Corp. of Boston*, 744 F.2d 719, 727 (10th Cir. 1984). Rather, jurisdiction over the representatives "must be based on their individual contacts with the forum state." *Ten Mile*, 810 F.3d at 1527.

The liability of the VFWCA defendants under this complaint is not

11

predicated on their status as corporate officers, but on their own personal acts as individuals in supporting and voting to fund the defamation lawsuit. These are contacts in Utah by the defendants themselves, not—as in *Ten Mile*—contacts that have been imputed to them on account of the actions of the corporation. So there is no derived liability, only primary liability, in this case. As the Utah Supreme Court has explained, an officer of a corporation is "not personally liable for torts of the corporation or of its other officers and agents merely by virtue of holding corporate office, but can only incur personal liability by participating in the wrongful activity." *Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 41 (Utah 2003) (citing 3A William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations*, § 1137, at 209 (rev. ed. 2002); *see id.* (no jurisdiction when corporate officer was not "personally making *or directing* others" (emphasis added)). Applying these principles, we hold that the district court erred in concluding that it lacked personal jurisdiction over the VFWCA defendants.

### III. ABUSE OF PROCESS

In a case arising under diversity jurisdiction, as this case does, the federal court must "ascertain and apply the state law." *Wade v. Emcasco Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007). In Utah, abuse of process "applies to 'one who uses a legal process . . . against another primarily to accomplish a purpose for which it is not designed.'" *Anderson Dev. v. Tobias*, 116 P.3d 323, 340 (Utah 2000) (internal citation omitted). Or, as the Utah Supreme Court put it in an

12

earlier case, the "essence" of abuse of process "is a perversion of the process to accomplish some improper purpose, such as compelling its victim to do something which he would not otherwise be legally obliged to do." *Crease v. Pleasant Grove City*, 519 P.2d 888, 890 (Utah 1974). To establish a claim for abuse of process in Utah, the claimant must show (1) an ulterior purpose in bringing the suit, and (2) a wilful act in the use of the process not proper in the regular conduct of the proceedings. *Hatch v. Davis*, 147 P.3d 383, 389 (Utah 2006) (quotations omitted). The second part of the test is known as the "wilful act" requirement, and to satisfy it "a party must point to conduct independent of the legal process itself that corroborates the alleged improper purpose." *Id*. at 389.

The district court focused on the "wilful act" requirement in dismissing the plaintiffs' claim. "The instant case," the court stated, "fails to properly state an abuse of process claim because there is no allegation of, or even a factual basis for asserting an independent act corroborative of an alleged improper purpose." Dist. Ct. Op. at 4. The district court reasoned that Mr. Lowe's lawsuit had been designed to "address the claim that he was defamed," *id*. at 4, and that his settlement offers were in pursuit of that end: to induce Messrs. Rusakiewicz and Spera to stop saying things about him that Mr. Lowe regarded as defamatory. We agree.

The plaintiffs ask us to regard the defamation lawsuit as abusive because, they say, their accusations against Mr. Lowe and the other VFWCA defendants

13

were truthful. But it was Mr. Lowe's position in his lawsuit that the accusations made by the plaintiffs were not "truthful" but rather defamatory. Defendants in defamation lawsuits often think their words were truthful and that the lawsuit is an improper attempt to silence them, but an allegation to that effect does not make all unsuccessful defamation suits actionable for abuse of process. In *Hatch*, the Utah Supreme Court noted that while the "essence" of abuse of process is using the legal process for a purpose which it was not designed, a claim for abuse of process must allege a "wilful act" in the use of the process that is "not proper in the regular conduct of the proceeding." 147 P.3d at 389 (internal citation omitted). The *Hatch* court stressed that the wilful act requirement could not simply be reduced to the "legal process that the tortfeasor pursues according to his ulterior motive." *Id.* "Such a definition," it cautioned, would "render the 'wilful act' requirement superfluous." *Id.* In other words, filing a lawsuit and performing ordinary acts in the regular course of the legal proceedings is not abuse of process even if the goals of the lawsuit are nefarious and improper.

To be sure, the plaintiffs allege not only that their accusations were truthful, but that Mr. Lowe knew they were truthful—that the goal of his suit was to prevent the plaintiffs from "communicat[ing] truthful information"—thus making the fundamental purpose of lawsuit improper. But allegations that a defamation plaintiff subjectively knew or must have known that the derogatory statements were truthful are easy to make. The "wilful act" requirement requires objective

14

proof of the improper purpose in the form of an independent act that "corroborates the alleged improper purpose." *Id.* at 389. It is not enough to allege that the defamation plaintiff knew the statements were truthful.

The plaintiffs point to Mr. Lowe's settlement offer as the act done "beyond the purview of the process," and so a candidate for an independent "wilful act." Appellant's Br. 40. But we agree with the district court that the attempt to settle the case was a part of, not an act outside of, the regular conduct of legal process. The settlement offer proposed that Messrs. Rusakiewicz and Spera agree, in exchange for dismissal, to "make no comments or communication of any nature relating in any manner to alleged criminal action or other violations of the law by any person concerning the transfer of members . . . ." The purport of that section of the agreement is that the two men would agree not to speak out against the alleged fraud and abuse by the VFWCA officers any more.

The plaintiffs characterize this passage from the settlement agreement as seeking to "prevent[] them from disseminating any accusations, truthful or not, that the plaintiffs in that prior case had engaged in fraud or other misconduct." Appellant's Br. 41–42. But it is not a step "beyond the purview" of legal action for defamation to seek an end to the defendant's alleged defamatory statements—whether the defamation defendant regards those statements as truthful or not. *See Bickel v. Mackie*, 447 F. Supp. 1376, 1383 (N.D. Iowa 1978) (including settlement as part of the goals of "proper process"). It is very hard,

15

practically impossible, to find a meaningful sliver of difference between the goal sought by the proffered settlement and the goal sought by the lawsuit: Mr. Lowe wanted Messrs. Rusakiewicz and Spera to stop spreading accusations about his alleged transgressions, he filed a lawsuit to get them to stop spreading these accusations, and he offered a settlement whereby they would agree to do so. Of course, the settlement would be *prospective* whereas the lawsuit would be *retrospective*—that is, it would deal with past speech and not future speech. But we do not regard this difference as decisive. One of the purposes of a damages action is to deter future repetitions of the tort. It is not unusual for a plaintiff to be willing to abandon a claim for damages if he is assured the tortious conduct will come to an end. It would be strange, and contrary to common legal practice, to regard such a settlement as an improper use of the legal process.

We do not rule out the possibility, under some circumstances, that a frivolous lawsuit could be filed in order to induce a patently unfair settlement on a subject matter related, but not identical to, the ostensible prayer for relief in the lawsuit. In such a case, the settlement offer might satisfy the "wilful act" prong of the abuse of proceedings analysis, even though it is nominally part of the same "legal process" as the original suit. But this would be the exceptional case. It would include only those cases where the settlement offer was so abusive that it would seem to be an end in itself, and not merely part of the ordinary legal process that was inaugurated with a lawsuit. The settlement offer in this case, however, is

16

little more than an attempt to forestall future tortious conduct of the same sort for which the lawsuit seeks damages. To say that Mr. Lowe's offer of settlement fell outside the legal process would be tantamount to saying that nearly *any* reasonable settlement offer falls outside the legal process—and this would be running afoul of *Hatch*'s admonition not to treat parts of the legal process as themselves "wilful acts." We therefore affirm the district court's dismissal of the plaintiffs' abuse of process claim.

## IV.  WRONGFUL USE OF CIVIL PROCEEDINGS

A claim for the wrongful use of civil proceedings (WUCP) in Utah "consists in instituting or maintaining civil proceedings for an improper purpose and without a justifiable basis." *Anderson Dev. Co.*, 116 P.3d at 340. A party asserting WUCP must show that (1) the actor initiating the prior proceeding acted without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim, and (2) that the prior proceeding terminated in favor of the person against whom it was brought. *Id*. at 340–41. A classic example would be a meritless title challenge to a piece of property filed for the purpose of preventing the owner from selling the land, *see* RESTATEMENT (SECOND) OF TORTS § 676 cmt. c, or a fabricated claim of domestic violence filed to gain leverage in an unrelated custody dispute. At a minimum, allegations of WUCP are usually accompanied by assertions that the lawsuit was brought to "harass" or "annoy" the other party. *See Baird v. Intermountain Sch. Fed. Credit Union*, 555 P.2d 877,

17

878 (Utah 1976).

Unlike abuse of process, WUCP does not require pleading an independent, corroborating act to show the suit's "improper purpose." So the flaw that doomed our plaintiffs' abuse of process claim does not carry over to the WUCP cause of action. WUCP does, however, require that the prior proceedings—the ones alleged to be "wrongful"—were ended in favor of the party now bringing the WUCP action.

The district court held that this second part of the WUCP test was not satisfied: the defamation case did not conclude in favor of Mr. Rusakiewicz and Mr. Spera because "Mr. Lowe voluntarily dismissed his own case." Dist. Ct. Op. 6. The district court continued that "this Court is satisfied the Utah Supreme Court would find, under the facts of this case, that such an ending does not constitute termination on the merits and therefore does not satisfy the requirements under Utah law for the tort of [WUCP]." *Id.*

The district court's reasoning seems to be that because Mr. Lowe had voluntarily dismissed his defamation action, even though he did so with prejudice, the case had not been terminated in the defamation defendants' favor. The case had merely gone away—neither side really got what they wanted, and no one prevailed on the merits. More importantly, there was no sense (none that the district court could discern, anyway) that the reason the suit had been voluntarily dismissed was because Mr. Lowe became convinced he had a losing case on his

18

hands.  In the district court's words, the dismissal "did not address the underlying issue of the truthfulness or defamatory nature of [Messrs. Rusakiewicz and Spera's] comments at the VFW convention."  *Id*.

We review the district court's decision de novo, keeping in mind that WUCP is a "disfavored" cause of action in Utah.  *Anderson Dev.*, 116 P.3d at 339 (quoting *Schmit v. Klumpyan*, 663 N.W.2d 331, 336 (Wisc. Ct. App. 2003)).

## A.  Favorable Termination

Utah courts have held that dismissal of a case can constitute a favorable termination.  *See, e.g.*, *Nielsen v. Spencer*, 196 P.3d 616, 623–24 (Utah App. 2008).  But the dismissal must either "reflect the merits" of the case or be "on the merits."  So, for instance, a suit that was dismissed for lack of jurisdiction would not be a "favorable termination," because a jurisdictional issue does not go to the merits of a case.  *Hatch v. Davis*, 102 P.3d 774, 780 (Utah App. 2004)**;** *Lackner v. LaCroix*, 602 P.2d 393, 394–95 (Cal. 1979) ("[T]ermination must reflect on the merits of the underlying action . . . . [A] dismissal . . . for lack of jurisdiction . . . not only is not on the merits, it is unreflective of the merits" (internal quotations omitted)).

The Utah courts are not entirely consistent in the terminology they use to describe a favorable termination—sometimes saying the decision has to be "on the merits" and sometimes saying it merely needs to be "reflective" of the merits.  In a recent unpublished case, the Utah Court of Appeals asserted that "a party bringing

19

a claim for wrongful use of civil proceedings must show that 'the underlying action resolved *on the merits* in his or her favor.'" *Puttuck v. Gendron*, No. 20070731-CA, 2008 WL 4603316, at *3 (Utah App. Oct. 17 2008) (quoting *Hatch*, 102 P.3d at 780). But in that same case, the court goes on to say—again citing *Hatch*—that "the 'termination must *reflect* on the merits of the underlying action.'" *Id*. at *3; *see also id*. ("The settlement between Plaintiffs and the Gendrons in their first litigation does not qualify as a favorable termination . . . because the settlement does not reflect on the merits of the parties' underlying claims and counterclaim."). In a case a few days after *Puttuck* was decided, the Utah Court of Appeals summarized the same *Hatch* case as standing for the proposition that "a dismissal for lack of jurisdiction is *neither on the merits nor reflective of the merits* of a proceeding." *Nielsen*, 196 P.3d at 621 (emphasis added). *Hatch* itself does not speak decisively in favor of either "no merits" or "reflective of the merits." *Hatch*, 102 P.3d at 780.

It may be that not much rides on distinguishing these two formulations. Even if the seemingly more demanding "on the merits" standard is authoritative, the Utah courts have not read that concept narrowly as only comprising a final adjudication on the merits (i.e., a victory for either side in trial), because the dismissal of a case can in "certain circumstances" be a termination on the merits. As the court said in *Nielsen*, "A review of the case law cited in *Hatch* suggests that, under certain circumstances, dismissal of an action as a discovery violation

20

may qualify as a dismissal on the merits for purposes of the wrongful use of civil proceedings tort." 196 P.3d at 623. In *Nielsen,* the repeated failure by a party to comply with discovery orders resulted in the dismissal of his suit; this was held to be a favorable termination of the suit "on the merits" for the purposes of the opposing party's WUCP claim. *Id*. at 623-24.

In light of this uncertainty, and because we cannot tell, based on the allegations in the complaint, whether Mr. Lowe's decision to dismiss his complaint with prejudice even "reflected" the merits, we cannot decide this case on that ground.

## B. Improper Purpose

The district court also put forward an alternative ground for its dismissal, based on the first of the requirements for the tort of WUCP, although it did not reach a definitive ruling on the issue. First, the district court noted that the plaintiffs made no allegation that the defamation suit was brought to accomplish an unrelated end or even to annoy or harass them. The court then cited a Utah case which suggested that in a claim of WUCP, an allegation that the "primary" purpose of the suit was to harass or annoy is properly one of the elements. *See Baird*, 555 P.2d at 878 (WUCP is "recognized only when the civil suit is shown to have been brought without probable cause, for the purpose of harassment or

annoyance; and it is usually said to require malice").[3]  Second, and more directly

salient for our thinking on the issue, the district court did not find *anything* in Mr.

Rusakiewicz's complaint—no factual reference or allegation—that pointed to Mr.

Lowe's suit being filed for a purpose "not commensurate with the proper

adjudication of the complaint."  Dist. Ct. Op. at 6 n.1  "The accusations

Rusakiewicz and Spera make that Mr. Lowe was using the case to try to get them

to stop saying the things they were saying about him," the district court said,

"appear to be precisely the kinds of things a plaintiff in Mr. Lowe's shoes would

do in the regular course of and entirely consistent with his cause of action."  *Id*.

For these reasons, the district court concluded that it was "doubtful" that the

WUCP complaint could survive a motion to dismiss "even at this early pleading

stage."  *Id*.

    We agree with the district court and affirm its decision on this alternative

ground, emphasizing especially the district court's reasoning on the lack of

purpose "commensurate with the proper adjudication of the case."  In their

complaint—and again at oral argument—the plaintiffs pointed to Mr. Lowe's offer

of a settlement to them.  Mr. Lowe, they alleged, filed the lawsuit in order to

"intimidat[e]" Mr. Rusakiewicz and Mr. Spera "not to disseminate and/or to retract

---

[3]We observe here, in passing, that Utah courts do not always list a purpose to harass or annoy as one of the elements of a WUCP claim in Utah.  See, for example, the recital of the elements of WUCP in *Hatch*, 102 P.3d at 779. Certainly, however, annoyance or harassment could be candidates for "purposes not consistent" with achieving a proper adjudication of the claim.

the truthful information [that they] provided at the Convention." Complaint at 5. This, as far as we can tell, is the sole allegation in the complaint that could be construed as a candidate for the "improper purpose" of the lawsuit. It is not sufficient.

As with the abuse of process claim, there is nothing improper about the settlement Mr. Lowe offered, nor does it show that he filed the lawsuit for a purpose "other than that of securing the proper adjudication of the claim." *Anderson Dev.*, 116 P.3d at 341. The offer had the same goal that motivated the suit—to induce Messrs. Rusakiewicz and Spera to cease making what Mr. Lowe claims were defamatory statements. To hold that his offer of a settlement was a goal ulterior to the lawsuit itself would be to risk making anyone who (a) filed a lawsuit, (b) offered a settlement that was consistent with the aims of that suit, and then (c) lost, liable to a WUCP complaint. This would be to make WUCP a run-of-the-mill claim rather than one which is usually "disfavored" by courts. *Id.* at 339 (quoting *Schmit*, 663 N.W.2d at 336). Although our system of civil justice has an interest in preventing frivolous lawsuits, it also has a concomitant interest, recognized by the Utah high court, in avoiding the "chilling" of potentially meritorious, or at least non-frivolous, suits, *id.*, and even of reasonable offers for settlement. Persons who believe themselves to be wronged are entitled to go to court to obtain an adjudication of their grievance, and should not be forced to do so at the peril of becoming defendants in a second suit if they should lose. The

23

WUCP tort must not be turned into a more lucrative substitute for Rule 11 sanctions. We therefore conclude that the plaintiffs' WUCP complaint fails for lack of a plausible allegation of an improper purpose outside the resolution of the defamation claim, and we affirm the district court's dismissal on that ground.

## V.  CONCLUSION

We REVERSE the district court's judgment that it lacked jurisdiction over Mr. Norris, Ms. Shaw, and Mr. Wolfe, but we AFFIRM the district court's dismissal of the abuse of process and wrongful use of civil proceedings claims.

24