**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**October 15, 2024**

_____

**Christopher M. Wolpert**
**Clerk of Court**

DP CREATIONS, LLC, a Utah limited
liability company, d/b/a Bountiful Baby,

    Plaintiff - Appellant,

v.

ADOLLY.COM, an unknown Chinese
business entity; SHENZEN CITY
AIDUOLA HUALIANWANG, LTD.,
an unknown Chinese business entity,
d/b/a Adolly US; HUIZHOU CITY
OTARD GIFTS, LTD., an unknown
Chinese business entity, d/b/a Otarddolls;
RUGAO LUOEN TRADING CO., LTD.,
an unknown Chinese business entity, d/b/a
Reborn Doll Gallery; NANJING
TIANZENG GIFTS, LTD., an unknown
Chinese business entity, d/b/a NPK,

    Defendants - Appellees.

No. 23-4126
(D.C. No. 2:22-CV-00230-DBB)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **BACHARACH**, and **CARSON**, Circuit Judges.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

This is a copyright case.  The question on appeal is whether the district court had personal jurisdiction over two Chinese companies that consented to jurisdiction in any judicial district in which Amazon "may be found," as that phrase is used in 17 U.S.C. § 512(g)(3)(D).  The district court interpreted the word "found" as requiring plaintiff to show that Amazon does business in Utah such that it is subject to suit and service of process there.  The court determined that the plaintiff failed to make that showing.

We conclude the district court applied the wrong test.  Whether Amazon may be found in Utah for § 512(g)(3)(D) purposes turns on whether its officers or agents are in Utah carrying on Amazon's business there, not whether the manner in which Amazon does business in Utah renders it liable to suit and service of process there. We further conclude Plaintiff showed that Amazon's officers and agents are carrying on Amazon's business in Utah.  Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we reverse the district court's amended judgment and remand for further proceedings.

**I.  Statutory Framework**

Congress enacted Title II of the Digital Millenium Copyright Act ("DMCA") in 1998 to "preserve[] strong incentives for service providers and copyright owners to cooperate to detect and deal with copyright infringements that take place in the digital networked environment."  H.R. Rep. No. 105-796, at 72 (1998), *as reprinted in* 1998 U.S.S.C.A.N. 639, 649.  The DMCA also aimed to "provide[] greater

certainty to service providers concerning their legal exposure for infringements that may occur in the course of their activities." *Id.*

When a copyright owner notifies a service provider (like Amazon) that a subscriber's material on the service provider's system or network infringes its copyrighted work, the service provider is not liable for copyright infringement if, among other things, it expeditiously removes or disables access to the allegedly infringing material. *See* § 512(c)(1)(C), (g)(4).[1] If the service provider notifies the subscriber that it has removed or disabled the material, it is not liable to any person for having done so. *See* § 512(g)(1)–(2)(A).

The subscriber, however, may have the material replaced by submitting a written counter notification to the service provider. § 512(g)(2)(B). To be effective, the notice must, among other things, set out "a good faith belief that the material was removed or disabled as a result of mistake or misidentification of the material." § 512(g)(3)(C). And for subscribers whose "address is outside of the United States," the notice must contain "a statement that the subscriber consents to the jurisdiction of Federal District Court . . . for any judicial district in which the service provider *may*

---

[1] For purposes of subsections (c) and (g), and as relevant here, the DMCA defines "service provider" as "a provider of online services or network access, or the operator of facilities therefor." 17 U.S.C. § 512(k)(1)(B). In the present case, Amazon is a service provider within the meaning of § 512(k)(1)(B) because it provides online services. *See Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1100 (W.D. Wash. 2004) (holding that Amazon is a service provider as defined in § 512(k)(1)(B) because it "operates web sites, provides retail and third party selling services to Internet users, and maintains computers to govern access to its web sites").

*be found*." § 512(g)(3)(D) (emphasis added).  Further, the subscriber must state it "will accept service of process from the person who provided notification under subsection (c)(1)(C) or an agent of such person." *Id.*

Upon receipt of an effective counter notification, the service provider may secure relief from liability by giving a copy of the counter notification to the person who provided the (c)(1)(C) notice, *see* § 512(g)(2)(B), and replacing the material within the stated timeframe unless it receives notice of a judicial action seeking to restrain the subscriber from engaging in infringing activity, *see* § 512(g)(2)(C).

## II.  Factual and Procedural Background

Plaintiff DP Creations, LLC, doing business as Bountiful Baby ("Bountiful Baby"), manufactures kits and supplies for creating lifelike infant dolls known as reborn dolls.  Bountiful Baby owns copyrights for its reborn-doll sculptures.  In 2022, Bountiful Baby learned that two Chinese companies—Shenzen City Aiduola Hualianwang, Ltd., doing business as Adolly US ("AUS"), and Rugao Luoen Trading Co., Ltd., doing business as Reborn Doll Gallery ("RDG"), were selling counterfeit copies of reborn dolls through Amazon.[2]  Bountiful Baby notified Amazon, which immediately took down the infringing materials and provided the companies with § 512(g)(2)(A) notifications.  AUS and RDG submitted counter notifications tracking

---

[2] Bountiful Baby learned that other Chinese companies were also offering counterfeit reborn dolls for sale through channels other than Amazon, and it named those companies as defendants in this action.  The district court's disposition of the claims against those other companies is not at issue in this appeal, so we do not discuss those claims.

the language of § 512(g)(3)(D), consenting to personal jurisdiction in "any judicial district in which Amazon *may be found*" and "agree[ing] to accept service of process from" Bountiful Baby or its agent.  App. vol. 3 at 660–81, 683–704 (emphasis added).

Bountiful Baby then filed this copyright infringement action and served process on AUS and RDG.  Neither defendant responded.  After default was entered, Bountiful Baby moved for entry of default judgment against both defendants.  The district court denied the motion, ruling that it lacked personal jurisdiction over AUS and RDG.  The court observed that Amazon is incorporated in Delaware and has its principal place of business in Washington, and it found that Bountiful Baby had not shown that Amazon "may be found" in Utah in accordance with principles of constitutional due process that typically inform a personal-jurisdiction analysis.  *See* App. vol. 4 at 835–40.

Bountiful Baby filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e).  It argued that Amazon may be found in Utah for § 512(g)(3)(D) purposes because Amazon maintains a physical presence or place of business there through multiple facilities.

The district court granted the motion in part, vacating the constitutional due process rationale it had applied in its dismissal order.  It otherwise denied the motion. The district court first rejected Bountiful Baby's reliance on numerous district court cases addressing counter notifications because they involved personal jurisdiction in states where the service providers were incorporated or maintained their principal

place of business, or because they failed to analyze personal jurisdiction at all. Instead, the district court analyzed the plain meaning of "found" by looking at "the relevant edition of Black's Law Dictionary," a portion of which "states 'it is necessary that [the corporation] be doing business in such state through an officer or agent or by statutory authority in such manner as to render it liable then to suit and to constructive or substituted service of process.'" App. vol. 4 at 1034 (brackets in district court's order) (quoting *Found*, BLACK'S LAW DICTIONARY (6th ed. 1990) ("Black's")). The district court determined that Bountiful Baby failed to show Amazon may be found in Utah under this meaning of "found."

### III.  Standard of Review

We review the denial of a Rule 59(e) motion for an abuse of discretion. *Burke v. Regalado*, 935 F.3d 960, 1044 (10th Cir. 2019). But in doing so, we review for legal errors de novo. *Id.*

### IV.  Analysis

#### A.    Analytic principles

"Our primary task in construing statutes is to determine congressional intent, using traditional tools of statutory interpretation." *Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1291 (10th Cir. 2024) (internal quotation marks omitted). "When interpreting a statute, we begin by examining the statute's plain language, and if the statutory language is clear, our analysis ordinarily ends." *Id.* (internal quotation marks omitted). "Tools of statutory interpretation include examination of the statute's text, structure, purpose, history, and relationship to other statutes."

*Id.* (internal quotation marks omitted).  "When a term is undefined in a statute, we must look to its ordinary meaning." *Id.*  "Dictionary definitions are useful touchstones to determine the ordinary meaning of an undefined statutory term." *Id.* (internal quotation marks omitted).

**B.     The meaning of "may be found"**

Section 512(g)(3)(D)'s phrase "may be found" is not defined in the statute, and the statute does not otherwise make its meaning clear.  Thus, we must look to its ordinary meaning.  The district court relied on the Black's Law Dictionary definition of "found" to the extent that definition implicates a jurisdictional analysis.[3]  The definition begins by explaining that "[a] person is said to be 'found' within a state *for purposes of service of process* when actually present therein." *Found*, Black's (emphasis added).  Then, the portion of the definition the district court relied on addresses the meaning of "found" with respect to service of process on corporations: "As applied to a corporation it is necessary that it be doing business in such state through an officer or agent or by statutory authority in such manner as to render it liable then to suit and to constructive or substituted service of process." *Id.*

---

[3] The DMCA was enacted on October 28, 1998.  *See* Digital Millenium Copyright Act, Pub. L. No. 105-304, 112 Stat. 2860 (1998).  At that time, Black's was in its Sixth Edition, so that is the relevant edition to consult.  *See Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute . . . .").

We reject the district court's reliance on the Black's definition because it defines "found" for purposes of service of process on a defendant-corporation. As we explain, whether process may be served on a corporation in a copyright case requires a due process analysis that, in some cases alleging copyright infringement by a service provider's subscriber, will prove impossible to perform.

There are "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919 (internal quotation marks omitted).

The "paradigm all-purpose forums" are those where a corporation "is incorporated or has its principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). However, the Supreme Court has not "foreclose[d] the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19 (citation omitted).

A service-of-process analysis in a copyright case is part of determining whether the forum state has personal jurisdiction over a defendant. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Because "the federal Copyright Act" does not "provide[] for nationwide service of process," a personal-jurisdiction analysis in a copyright case requires courts to apply the law of the forum state to determine whether service of process would be proper. *Id.*

In cases involving a subscriber's consent to jurisdiction under § 512(g)(3)(D) where the service provider is a corporation that is at home in the forum state and thus subject to general personal jurisdiction, Black's jurisdictional definition of "found" might prove workable because the service provider would clearly be subject to suit and service of process. But in cases like this one, where the service provider is not a resident of the forum state and therefore potentially not "at home" in the forum state, the definition is problematic.

The forum state here is Utah. Utah's long-arm statute authorizes its courts to exercise jurisdiction over "nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment." Utah Code Ann. § 78B-3-201(3); *see also SII MegaDiamond, Inc. v. Am. Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998) ("[A]ny set of circumstances that satisfies due process will also satisfy the long-arm statute."). This broad authorization "collapses the Utah standard into the more general 'due process' standard for jurisdiction." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009). The inquiry into specific jurisdiction over nonresident defendants is, therefore, "reduced to a single question: did the

9

defendants have sufficient 'minimum contacts' with the state of Utah to establish personal jurisdiction over them?" *Id.*[4]

Section 512(g)(3)(D) does not suggest that Congress intended to limit where a service provider "may be found" to federal districts where the service provider is subject to general jurisdiction; if it meant to do so, Congress could have simply said so. Thus, in § 512(g)(3)(D) cases where general jurisdiction is absent, a due process analysis will require courts to determine whether the service provider is subject to specific jurisdiction in the forum state. That requires examining whether "the plaintiff's injuries . . . arise out of defendant's forum-related activities." *Dudnikov*, 514 F.3d at 1071 (internal quotation marks omitted). Plainly, this would be an impossible task because the service provider is not a defendant, so the plaintiff's injuries do not—and could not—arise out of the service provider's forum-related activities. Rather, the plaintiff's injuries arise out of the activities of the service provider's subscriber. In practice, then, Black's jurisdiction-based definition of "found" is inadequate considering the context in which Congress used the word in § 512(g)(3)(D). *See* Antonin Scalia, Bryan A. Garner, *A Note on the Use of Dictionaries*, 16 Green Bag 2d 419, 422 (2013) ("Occasionally most dictionaries will define a word inadequately -- without accounting for its semantic nuances as they

---

[4] *Rusakiewicz* was a diversity case, *see* 556 F.3d at 1099, but the same rule applies in a copyright case, which involves federal-question subject matter jurisdiction. *See Dudnikov*, 514 F.3d at 1070 (concluding, in a copyright case, that Colorado's similarly broad long-arm statute collapses the service-of-process inquiry "into the second, constitutional, analysis").

may shift from context to context . . . .").  Insofar as it implicates a jurisdictional analysis, therefore, we reject the Black's definition as establishing the meaning of "may be found" in § 512(g)(3)(D).[5]

Having concluded Black's definition of "found" is inapplicable here, we turn to non-legal dictionaries existing at the time the DMCA was enacted in 1998. Bountiful Baby supplies two such definitions of "find," which is the present tense of "found":  "'to come upon,' 'to locate,' WEBSTER'S AMERICAN FAMILY DICTIONARY at 351 (1998), or to 'discover,' THE OXFORD AMERICAN DESK DICTIONARY at 215 (1998).'"  Aplt. Opening Br. at 23 (typeface altered).  Other dictionaries are in accord.  *See Find*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (3d ed. 1996) ("To come upon, often by accident; meet with. . . . To come upon after a search . . . ."); *Find*, WEBSTER'S NEW WORLD DICTIONARY, THIRD COLLEGE ED. (1988) ("to happen upon; come upon; meet with; discover by chance").  Coupling the "find/found" definitions with the word "may," which "express[es] possibility or likelihood," *May*, WEBSTER'S NEW WORLD DICTIONARY, THIRD COLLEGE ED. (1988), we conclude that a federal district court has personal jurisdiction over a subscriber whose address is outside the United States if it is possible to come upon or locate the service provider in the forum state.

---

[5] Given our conclusion regarding the inapplicability of Black's definition of "found," we need not address Bountiful Baby's "rule of the last antecedent" argument.

11

This conclusion begets the next—and dispositive—question: how does one come upon or locate a service provider that is a corporation? For § 512(g)(3)(D) purposes, one way is through the location of the corporation's agents or officers who are carrying on the corporation's business in the forum state. This conclusion is consistent with case law interpreting the word "found" in other statutory contexts that have used this formulation or a close variant of it. *See, e.g.*, *People's Tobacco Co. v. Am. Tobacco Co.*, 246 U.S. 79, 84 (1918) (construing the word "found" in Section 7 of the Sherman Act, now codified at 15 U.S.C. § 15(a), to mean "present in the district by its officers and agents carrying on the business of the corporation"); *Aro Mfg. Co. v. Auto. Body Rsch. Corp.*, 352 F.2d 400, 404 (1st Cir. 1965) (construing the word "found" in the Clayton Act's venue provision, 15 U.S.C. § 22, to mean "present there by its officers and agents carrying on the business of the corporation"); *In re Eli Lilly & Co.*, 37 F.4th 160, 165 (4th Cir. 2022) (construing "found" in statute concerning discovery for use in a foreign tribunal, 28 U.S.C. § 1782(a), as meaning "physically present by its officers and agents carrying on the corporation's business");[6] *Wichita Fed. Sav. & Loan Ass'n v. Landmark Grp., Inc.*, 674 F. Supp. 321, 328 (D. Kan. 1987) (construing the word "found" in a venue provision in Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa(a), to mean "a presence and continuous local activity within the district"); *Payne v. Mktg.*

---

[6] Given the possibility that a corporation could conduct business in a state via the internet, our citation of *Eli Lilly* is not meant to suggest that a physical presence is always necessary for a service provider to be found in a state within the meaning of § 512(g)(3)(D).

*Showcase, Inc.*, 602 F. Supp. 656, 658–59 (N.D. Ill. 1985) (construing the word "found" in the RICO venue statute, 18 U.S.C. § 1965(a), to mean "present [in the district] by its officers and agents carrying on the business of the corporation").[7] "When administrative and judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its administrative and judicial interpretations as well." *Bragdon v. Abbott*, 524 U.S. 624, 645 (1998).

In sum, we conclude that when a service provider is a corporation, it may be found in a federal judicial district for § 512(g)(3)(D) purposes if its agents or officers carry on the corporation's business in the district.

## C.     Bountiful Baby showed that Amazon "may be found" in Utah

Bountiful Baby presented documentary evidence showing that Amazon's agents or officers are present in Utah and carrying on Amazon's business there. An article prepared by the Utah Governor's Office of Economic Opportunity in 2021 states that "Amazon invested over $1 billion in Utah from 2010 to 2019, including infrastructure and compensation to employees," and that "[i]n 2020, Amazon launched new customer fulfillment centers and delivery stations in Utah."

---

[7] We acknowledge that *People's Tobacco* and *Aro* concluded that being found in a state under the announced tests will subject the corporation to service of process and, hence, personal jurisdiction. *See People's Tobacco*, 246 U.S. at 84; *Aro*, 352 F.2d at 402, 404. But as we have concluded, in the context of § 512(g)(3)(D) and under Utah law, the service of process/jurisdictional analysis is inapt. That, however, does not detract from the usefulness of the interpretation of "found" those cases provide.

App. vol. 4 at 915. A 2022 newspaper article reported that "since its first center in Utah debuted in 2019," Amazon had "opened more than a dozen sites, including corporate offices," and had "become the state's top tech employer." App. vol. 3 at 707. The article also stated that in 2021, Amazon had "more than 5,000 employees across its operations network" in Utah, "and over 250 corporate employees in Salt Lake City." *Id.* at 708. Another 2022 news article states that Amazon "operates 16 facilities in Utah and employs thousands of people at corporate offices, sorting and fulfillment centers, delivery stations and a pharmacy distribution center." App. vol. 4 at 929. Clearly, it is possible to come across or locate Amazon in Utah because its agents and officers carry on Amazon's business in Utah. *Accord Cawthon v. Zhousunyijie*, No. 22-cv-03021, 2024 WL 1156073, at *4 (S.D.N.Y. Mar. 18, 2024) (unpublished) (concluding that a defendant who listed an address in China in a § 512(g)(3) counter notification had consented to the district court's jurisdiction because "[a]n Amazon fulfillment center is located within this jurisdiction").

## V. Conclusion

We reverse the district court's amended judgment dismissing Bountiful Baby's action against AUS and RDG and remand for further proceedings consistent with this decision.

Entered for the Court


Joel M. Carson III
Circuit Judge